IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PROFESSIONAL PROJECT SERVICES, INC. )<br>                                                 )<br>      Plaintiff,       )<br>                                                 )<br>v.                                                 )<br>                                               )<br>LEIDOS INTEGRATED TECHNOLOGY, LLC )<br>                                             )<br>and                                          )<br>                                             )<br>HANFORD MISSION INTEGRATION     )<br>SOLUTIONS, LLC,                    )<br>                                             )<br>      Defendants.     )| Case No. _____ |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

For its Complaint against Defendants, Plaintiff Professional Project Services, Inc. ("Pro2Serve") states:

1.      Pro2Serve brings this action to enjoin Defendants' breach of a non-competition agreement and to remedy Defendants' conspiracy to interfere with Pro2Serve's business.

2.      Defendant Leidos Integrated Technology, LLC ("Leidos") and Pro2Serve entered into a Teaming Agreement ("Agreement") to jointly pursue a multi-billion dollar contract with the Department of Energy ("DOE"). Upon information and belief, Leidos assigned the Agreement to Defendant Hanford Mission Integration Solutions, LLC ("HMIS"), which became the formal offeror for the DOE work.

3.      Pro2Serve was essential to the Defendants' ability to receive the DOE contract, and Pro2Serve contributed significantly to the team's proposal. With Pro2Serve's help, DOE selected the team's proposal for award.

4. In the Agreement, Defendants promised not to compete with Pro2Serve for that work and, in the event the team won the work, to negotiate in good faith with Pro2Serve to reach a subcontract.

5. Defendants have breached the Agreement's non-compete provision and other portions of the Agreement, have wrongfully terminated the Agreement, and have conspired to interfere with the Agreement and Pro2Serve's prospective business opportunities for other projects.

6. If Defendants are not enjoined from their wrongful conduct, Pro2Serve will be irreparably harmed.

## Parties

7. Plaintiff Pro2Serve is a Tennessee corporation with offices located at 1100 Bethel Valley Road, Oak Ridge, Tennessee 37830.  Pro2Serve is a small business engaged in federal contracting and subcontracting for, among other things, DOE programs and environmental remediation efforts.

8. Defendant Leidos, identified in the Agreement as "Leidos Integrated Technology, Inc.," is a Delaware corporation registered to do business in Virginia, maintains offices in Reston Virginia, but purports to have its principal place of business in Gaithersburg, Maryland.

9. Defendant HMIS is a Delaware entity with offices in Richland, Washington and Reston, Virginia.  Leidos is a partial owner of HMIS, which has at least two other owners. HMIS submitted the team's proposal to DOE.

## Jurisdiction and Venue

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims occurred in this judicial district, and because the Defendants are subject to personal jurisdiction in this district.  Defendants have purposefully availed themselves of the benefits and protections of the Commonwealth of Virginia in connection with the acts and omissions giving rise to this dispute.  Further, in the Agreement, Defendants agreed that any dispute arising out of or relating to the Agreement "may only be brought exclusively in a court of competent jurisdiction in the Commonwealth of Virginia."

## Factual Allegations

12. In the 1940s, the U.S. Government manufactured plutonium for the Manhattan Project near the town of Hanford in Benton County, Washington.  The manufacturing process created radioactive waste and caused environmental damage to the area, which today is known as the Hanford Site.  DOE manages a large network of contractors performing environmental clean-up and remediation work in the area.

13. On November 21, 2017, DOE announced plans to hold a competition for a contract to coordinate and integrate the Hanford Site's environmental clean-up operations (the "Hanford Mission Essential Services Contract" or "HMESC").

14. The contract award process followed standard federal contracting laws under the Competition in Contracting Act of 1984, which required DOE to issue a Request for Proposals

("RFP") soliciting competitive offers from interested parties. The RFP stated DOE's minimum requirements for an acceptable proposal and the criteria by which DOE would evaluate proposals and select a winner.

15.     The total cost of the contract is estimated to be roughly $4.8 billion.

16.     Among other things, DOE required bidders to set aside a significant portion of the total contract value to be performed by small business subcontractors. The U.S. Government has a variety of regulations to promote and protect the use of small businesses in federal contracting. The Federal Acquisition Regulation (codified at 48 C.F.R. Parts 1-53) ("FAR") includes standard terms requiring prime bidders for a federal contract to set goals for using small business subcontractors. FAR 52.219-9.

17.     The U.S. Small Business Administration's rules provide additional protection for small business subcontractors. If a bidder includes a small business as a subcontractor in its proposal to the U.S. Government, or if the bidder has a teaming agreement with a small business to serve as a subcontractor, the bidder must make good faith efforts to utilize the small business as a subcontractor during contract performance to the same extent as in the proposal or teaming agreement. 13 C.F.R. § 125.3(c)(3).

18.     Defendants are not small businesses and needed to work with small businesses to be eligible for DOE's award. Pro2Serve is a small business.

19.     In late 2017, the parties began discussions about forming a team to pursue the HMESC award. The parties contemplated that Pro2Serve would provide support to Leidos in preparing and submitting a proposal to DOE, and if the team won the DOE contract, Pro2Serve would receive a subcontract. This arrangement allowed both Pro2Serve and Leidos to compete for a valuable federal contracting opportunity that they could not have otherwise pursued alone.

The arrangement gave Pro2Serve a valuable opportunity to gain contracting experience with a large DOE program, while allowing Leidos to meet DOE's small business subcontracting requirements.

20. On July 9, 2018, Pro2Serve provided Leidos with a Letter of Commitment to work on a proposal for the HMESC award. Pro2Serve expected that the letter would be a placeholder until the parties negotiated a formal teaming agreement.

21. On September 20, 2018, DOE released the RFP, which required the winning bidder to provide 40% of the total contract value to subcontractors, and it further required that 50% of the subcontracted work be set aside for small businesses. In other words, 20% of the total contract value had to be set aside for small business subcontractors like Pro2Serve.

22. Pro2Serve and Leidos continued to work together toward submitting a proposal. Leidos repeatedly stated that it would provide an agreement to Pro2Serve to memorialize their teaming arrangement, but failed to do so.

23. On October 12, 2018, Pro2Serve sent a letter to Leidos explaining that, because Leidos had failed to provide a teaming agreement, Pro2Serve was terminating the Letter of Commitment. Pro2Serve had informed Leidos that it required a written agreement, including a commitment to name Pro2Serve in the proposal, to describe its workshare, and to include and identify its pricing in the team's cost proposal.

24. In response to Pro2Serve's letter, Leidos sent Pro2Serve a draft teaming agreement.

25. On October 22, 2018, Pro2Serve signed the Agreement with Leidos, which Leidos countersigned on October 23, 2018.

26. The Agreement acknowledged that the participation and assistance of Pro2Serve was critical to Leidos's effort to win the HMESC award. Leidos agreed that there were "voids" in its "technical and production capabilities" and that Pro2Serve was "essential to the Offeror's Technical Approach."

27. Leidos acknowledged that DOE required the participation of small business subcontractors like Pro2Serve. Indeed, Leidos promised to not only meet DOE's subcontracting goal, but to "exceed" it.

28. The parties agreed not to compete with each other for the work covered by the Agreement. In particular, Section 21 of the Agreement provided the following:

> Since this Agreement, and any proposal, offer or quote prepared or generated in connection therewith, requires the full cooperation of the Parties, both Parties agree that they will *not in any manner participate in or undertake efforts that are competitive to this Agreement, nor will they compete for the Procurement* or respond to the Solicitation, independently or in conjunction with any other Party, during the term of this Agreement. (Emphasis added).

29. The Agreement explained that Pro2Serve would be responsible for specific work areas under the DOE RFP. Among other things, Pro2Serve would perform work relating to the RFP's contract line items ("CLINs") 1, 4, 5, 6, 7, and 8.

30. Under the Agreement, the team's bid would be submitted by a special purpose entity ("SPE"), which would also serve as the prime contracting entity. HMIS was the SPE.

31. In exchange for Pro2Serve's support, Leidos committed in the Agreement that the SPE would name Pro2Serve in its proposal as a team member, describe Pro2Serve's work scope, and include Pro2Serve's pricing in the cost proposal for DOE's evaluation and consideration.

32. If DOE selected HMIS for award, the parties agreed that they would "engage in good faith negotiations towards entering into a subcontract. The Parties will undertake

reasonable efforts to enter into a subcontract for that portion of the work set forth in Exhibit A of this Agreement, as may be modified by the Parties . . . ."

33. Leidos and Pro2Serve acknowledged that DOE's approval could be required before finalizing a subcontract. They thus agreed as follows:

> It is understood that the SPE may be directed by the Government to place the work contemplated in Exhibit A as the Subcontractor's responsibility, with another source, or to direct that such work be bid on a competitive basis. In such event, *the SPE will present to the Government its grounds for reversal of such direction*. The Subcontractor shall, upon request of the SPE, provide assistance in connection with such presentation. If a reversal cannot reasonably be obtained, then the SPE shall comply with the Government's direction, and under such circumstances, the Parties shall have no further obligations to one another hereunder, except as set forth in any separate Non-Disclosure Agreement between the Parties. (Emphasis added).

34. Prior to submitting the proposal, Defendants shared a draft proposal with Pro2Serve that named Pro2Serve and described its workshare.

35. On or around November 19, 2018, HMIS submitted the proposal to DOE. Upon information and belief, Defendants' proposal did not describe Pro2Serve's workshare in any meaningful fashion, and did not include and/or identify Pro2Serve's pricing in the cost proposal, as the Agreement required.

36. On or around September 17, 2019, HMIS submitted an updated proposal to DOE.

37. On or around December 5, 2019, DOE selected HMIS's proposal for award.

38. On January 13, 2020, a losing bidder filed a bid protest with the U.S. Government Accountability Office ("GAO"), arguing that DOE unreasonably selected HMIS. The protest triggered an automatic stay of DOE's award, which prevented DOE and HMIS from undertaking any activities to transition into performance. *See* 31 U.S.C. § 3553.

39. The protestor argued, among other things, that DOE should have found HMIS's subcontracting approach described in its Technical and Management Proposal volume and its

7

subcontracting plan in HMIS's Offer and Other Documents volume to be unacceptable and HMIS therefore ineligible for award.

40. HMIS intervened in the GAO proceeding to defend DOE's award decision.

41. Upon information and belief, HMIS and DOE argued that HMIS's subcontracting approach under the Technical and Management Proposal as well as the subcontracting plan in the Offer and Other Documents volume were in fact acceptable. On April 22, 2020, GAO agreed with their arguments and denied the bid protest. *Hanford Integrated Infrastructure Serv. Contractor, LLC*, B-418411 *et al.*, Apr. 22, 2020, 2020 CPD ¶ 159 at 4-8. GAO found that DOE had reasonably evaluated the HMIS subcontracting approach and subcontracting plan and had properly found the proposal was acceptable.

42. On or around August 17, 2020, DOE notified HMIS that it could proceed with performance of the contract.

43. On September 24, 2020, Defendants sent a letter to Pro2Serve purporting to terminate the Agreement because DOE had not approved HMIS's "subcontracting implementation strategy," and stating that ". . . HMIS has been unable to obtain DOE consent for the sole source award of a subcontract to [Pro2Serve]." The letter, bearing HMIS letterhead, was signed by Kodi Kosmoski, "Associate Director, Subcontracts, Leidos, Inc." Upon information and belief, Kodi Kosmoski is a Leidos employee who works from the Leidos and HMIS offices in Reston (Fairfax County), Virginia and the letter was composed and sent from those Reston offices. In addition, HMIS's small business liaison officer works from Reston.

44. Upon information and belief, Mr. Kosmoski of Leidos prepared the letter in concert with at least two employees of HMIS — Rick Millikin and Greg DeWeese.

45. The letter asserted that "HMIS placed forth our subcontracting strategy as envisioned by the proposal" and that DOE had responded by "stating that the strategy was non-compliant," a claim that appears inconsistent with the position of both DOE and HMIS in the bid protest litigation before GAO.

46. Defendants further claimed that DOE had "provided direction through briefings on 'CO [Contracting Officer] Expectations' that made it clear that the subcontracting implementation strategy based on the teaming arrangements and submissions within our proposed subcontracting strategy would not be compliant."

47. Defendants' characterizations of DOE's position and the CO Expectations were false and made to mislead Pro2Serve. In fact, as Pro2Serve later learned, DOE did not deny consent for a Pro2Serve subcontract and did not direct Defendants not to subcontract with Pro2Serve, but instead described generic subcontracting concepts.

48. Indeed, Defendants never submitted a proper and complete package of information that DOE would need to evaluate Pro2Serve as a subcontractor.

49. Moreover, the generic subcontracting concepts that DOE outlined did not prohibit a subcontract to Pro2Serve, nor did they direct Defendants to self-perform the work that the Agreement allocated to Pro2Serve.

50. Rather than seeking DOE's approval of a subcontract package with Pro2Serve, Defendants omitted to inform DOE of the Agreement with Pro2Serve.

51. Defendants' statements to DOE misrepresented their relationship with Pro2Serve.

52. Defendants failed to make good faith efforts to seek reversal of the purported DOE decision on subcontracting, and excluded Pro2Serve from communications with DOE. In fact, when presented with a written draft setting forth DOE's position on subcontracting,

Defendants proposed edits to that document that would support DOE's position and excuse Defendants from complying with the subcontracting obligations in the written HMESC contract.

53. Defendants also never presented to DOE a subcontract with Pro2Serve. Indeed, Defendants never attempted to negotiate subcontract terms with Pro2Serve.

54. DOE's rejection of Defendants' "subcontracting strategy" reflects that Defendants' proposal for the prime contract failed to adequately describe Pro2Serve's workshare and responsibility, and to accurately and adequately portray Pro2Serve.

55. Upon information and belief, at all relevant times Leidos was represented by and acted through Mr. Kosmoski and others, and HMIS was represented by and acted through Messrs. Millikin and DeWeese and others.

56. On September 28, 2020, Pro2Serve provided a written response to Defendants' September 24 termination letter, requesting that Defendants withdraw the letter.

57. On October 14, 2020, Pro2Serve again wrote to Defendants, requesting that they provide evidence of DOE's purported position and Defendants' responses to DOE, and again requested that Defendants withdraw the termination letter.

58. Defendants refused to withdraw their termination letter.

59. Defendants have told Pro2Serve that they intend to perform themselves the work allocated to Pro2Serve in the Agreement, which would directly violate the Agreement's non-competition provision.

60. While purporting to terminate the Agreement on September 24, 2020, Defendants sought to have DOE modify the HMESC's requirements so that Defendants could self-perform a greater share of the work and subcontract a lesser share of the work.

## Count I
## Breach of Covenant Not to Compete

61. Pro2Serve incorporates the allegations of paragraphs 1 through 60 above.

62. Pro2Serve and Leidos entered into an enforceable Agreement which, upon information and belief, Leidos has assigned to HMIS.

63. Pro2Serve performed its obligations under the Agreement.

64. In consideration for Pro2Serve's proposal support, data, and commitment to work as a subcontractor for HMESC, Defendants promised to work exclusively with Pro2Serve for the workshare in the Agreement and not to compete with Pro2Serve for the same.

65. Defendants have asserted that they will self-perform the work identified in the Agreement and failed to negotiate a subcontract with Pro2Serve, in direct violation of those promises in the Agreement.  Defendants have thus breached the covenant not to compete with Pro2Serve.

66. As a direct and proximate result of Defendants' breach, Pro2Serve has suffered damages and irreparable harm.

67. Defendants' actions constitute a breach of contract for which Defendants are liable to Pro2Serve.

## Count II
## Breach of Contract

68. Pro2Serve incorporates the allegations of paragraphs 1 through 67 above.

69. In consideration for Pro2Serve's proposal support, data, and commitment to work as a subcontractor, Defendants agreed to a series of terms.  Among other things, Defendants agreed that their proposal to DOE would identify Pro2Serve as a team member, describe the relationship and respective areas of responsibility of the parties, and include and identify

Pro2Serve's pricing in the cost proposal. Defendants agreed that they would accurately and adequately portray Pro2Serve and its data. Defendants further agreed that they would negotiate in good faith with Pro2Serve to reach a subcontract and, if DOE directed that the work be placed with another source, to present to DOE the grounds for reversal of such direction.

70. Defendants breached their contractual duty to submit a proposal that adequately described the relationship and respective areas of responsibility of the parties, and included and identified Pro2Serve's pricing in the cost proposal.

71. Defendants breached their contractual duty to accurately and adequately portray Pro2Serve and to identify Pro2Serve's portion of work in the proposal.

72. Defendants breached their contractual duty to negotiate in good faith for a subcontract with Pro2Serve.

73. Defendants breached their contractual duty to provide a Pro2Serve subcontract to DOE.

74. Defendants breached their contractual duty to take necessary and good faith steps to seek reversal of any DOE decision to disapprove of a subcontract with Pro2Serve.

75. Defendants wrongfully terminated the Agreement.

76. As a direct and proximate result of Defendants' breach, Pro2Serve has suffered damages and irreparable harm.

77. Defendants' actions constitute a breach of contract, including a breach of the covenant of good faith and fair dealing, for which Defendants are liable to Pro2Serve.

## Count III
**Tortious Interference With Contract**

78.     Pro2Serve incorporates the allegations of paragraphs 1 through 77 above.

79.     If Leidos assigned the Agreement to HMIS then, by the acts described herein, Leidos intentionally interfered with the Agreement between HMIS and Pro2Serve. In the alternative, if Leidos did not assign the Agreement to HMIS then, by the acts described herein, HMIS intentionally interfered with the Agreement between Leidos and Pro2Serve.

80.     Further, each Defendant who was not then a party to the Agreement conspired with the other Defendant to interfere with the Agreement, inducing or causing a breach of the Agreement.

81.     As a direct and proximate result of that conduct, Pro2Serve suffered, and will continue to suffer, damage and all Defendants have been unjustly enriched. This damage was a reasonably foreseeable consequence of Defendants' conduct.

82.     Defendants' actions constitute an intentional interference with contractual relations for which they are jointly and severally liable to Pro2Serve.

83.     All Defendants also are jointly and severally liable to Pro2Serve as conspirators.

84.     Defendants' conduct evidenced malice or such a reckless disregard for the rights of Pro2Serve as to justify an award of punitive damages.

## Count IV
**Tortious Interference With Prospective Business Advantage**

85.     Pro2Serve incorporates the allegations of paragraphs 1 through 84 above.

86.     Apart from the Agreement, Pro2Serve has prospective business and contractual relations with purchasers of its services, including DOE and other customers and prospective

customers. Defendants were aware of the existence of those relationships, and the importance of those relationships to Pro2Serve.

87. Pro2Serve had a reasonable certainty or likelihood of benefit from those relationships.

88. Defendants intentionally interfered with those relationships, threatening the termination or diminution of those relationships.

89. Defendants knew that their actions would induce, cause, or threaten a termination or diminution of those relationships.

90. Defendants employed improper and wrongful conduct including, but not limited to, the false statements, interference, and conspiracy described herein. They attempted to exclude and/or damage Pro2Serve as a competitor.

91. Their actions were not conducted on the basis of common honesty and fairness.

92. Rather, their actions were tainted by deception, trickery, and other unfair methods and wrongful conduct.

93. As a direct and proximate result of their conduct, Pro2Serve suffered, and will continue to suffer, damage, and all Defendants have been unjustly enriched. This damage was a reasonably foreseeable consequence of Defendants' conduct.

94. Defendants' actions constitute an intentional interference with prospective business and contractual relations for which they are jointly and severally liable to Pro2Serve in an amount to be proven at trial.

95. Defendants also are jointly and severally liable to Pro2Serve as conspirators.

96. Defendants' conduct evidenced malice or such a reckless disregard for the rights of Pro2Serve as to justify an award of punitive damages.

### Count V
### Violation of Va. Code. Ann. § 18.2-499

97. Pro2Serve incorporates the allegations of paragraphs 1 through 96 above.

98. Through their misrepresentations and interference with contract and prospective business advantage, Defendants combined, associated, agreed, mutually undertook, or acted in concert together and/or with other unknown persons for the purpose of willfully and maliciously injuring Pro2Serve's business, in violation of Va. Code Ann. §§ 18.2-499 and 18.2-500.

99. In the alternative, by the conduct described herein, each Defendant has attempted to procure the participation, cooperation, agreement, or other assistance of one or more persons to enter into a combination, association, agreement, mutual understanding, or concert for the purpose of willfully and maliciously injuring Pro2Serve in its business.

100. As a direct and proximate result of the Defendants' actions, Pro2Serve was injured and has suffered damages and Defendants have been unjustly enriched.

101. The Defendants' actions constitute a violation of Va. Code Ann. § 18.2-499 for which they are jointly and severally liable to Pro2Serve under Va. Code Ann. § 18.2-500 in the amount of three-fold the damages suffered by Pro2Serve, or three-fold the gain achieved by Defendants, and Pro2Serve's costs and reasonable attorneys' fees.

### Request for Relief

WHEREFORE, Plaintiff Pro2Serve respectfully requests that this Court enter a judgment for Pro2Serve and award Pro2Serve the following relief:

   a) A temporary and permanent injunction prohibiting Defendants, and all those acting in concert with Defendants, from breaching the Agreement's non-competition provisions by performing, directly or indirectly, the work allocated to Pro2Serve in the Agreement;

b) Specific performance of the Agreement, including but not limited to the obligation to negotiate in good faith a subcontract with Pro2Serve and the obligation to take necessary and good faith steps to cause the reversal of any DOE direction to place Pro2Serve's work with another source;

c) Compensatory damages in an amount not less than $8,100,000;

d) Disgorgement of the amounts by which Defendants have been unjustly enriched, including all profits and contributions to overhead and general administrative pools, received by Defendants from their actions, in an amount not less than $8,100,000;

e) The greater of three-fold the damages suffered by Pro2Serve and three-fold the gain achieved by Defendants, pursuant to Va. Code Ann. § 18.2-500;

f) Prejudgment interest;

g) Punitive damages in the amount of $350,000;

h) Attorney's fees and costs in connection with this action; and

i) Any such other relief that the Court deems just and proper.

Respectfully submitted,

/s/ *Daniel E. Johnson*
Daniel E. Johnson Va. Bar No. 88696
Evan R. Sherwood Va. Bar No. 89564
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C.  20001
Phone:  202-662-5224
Fax:  202-778-5224
Email:
    dejohnson@cov.com
    esherwood@cov.com
Counsel for Plaintiff

November 12, 2020