IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| PROFESSIONAL PROJECT SERVICES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01360-CMH-MSN |
| | ) | |
| LEIDOS INTEGRATED TECHNOLOGY, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS UNDER RULE 12(b)(6)**

Douglas P. Lobel, Esq.
Virginia State Bar Number 42329
David A. Vogel
Virginia State Bar Number 48971
Attorney for Leidos Integrated Technology, LLC
and Hanford Mission Integration Solutions, LLC
COOLEY LLP
11951 Freedom Drive
Reston, Virginia 20190-5656
Telephone: (703) 456-8000
Facsimile:  (703) 456-8100
Email:  dlobel@cooley.com
Email:  dvogel@cooley.com

Daniel J. Grooms III, Esq.
*Admitted pro hac vice*
Attorney for Leidos Integrated Technology, LLC
and Hanford Mission Integration Solutions, LLC
COOLEY LLP
1299 Pennsylvania Ave., N.W., Suite 700
Washington, DC  20004
Telephone: (202) 842-7800
Facsimile:  (202) 842-7899
Email:  dgrooms@cooley.com

Dated:  December 3, 2020

# TABLE OF CONTENTS

**Page**

ALLEGED FACTS.................................................................................................. 2

    I.    LEIDOS SUBMITTED A PROPOSAL TO DOE FOR A HUGE
    CONSTRUCTION CONTRACT IN WASHINGTON STATE ........................... 2

    II.    LEIDOS AND PRO2SERVE ENTERED INTO A TEAMING
    AGREEMENT TO SUBMIT A PROPOSAL TO DOE........................................ 3

    III.    DOE REJECTED HMIS' REQUEST TO AWARD A SUBCONTRACT
    TO PRO2SERVE.................................................................................................. 5

    IV.    PRO2SERVE'S COMPLAINT ALLEGES FIVE CAUSES OF ACTION .......... 6

STANDARD OF REVIEW ..................................................................................... 7

ARGUMENT ......................................................................................................... 7

    I.    PRO2SERVE FAILS TO STATE CLAIMS FOR BREACH OF
    CONTRACT ........................................................................................................ 7

        A.    The Teaming Agreement Is an Unenforceable "Agreement to
        Agree" ........................................................................................................ 7

            1.    Many Courts Have Held that a Teaming Agreement Does
            Not Create the Right to a Subcontract ........................................... 8

            2.    Pro2Serve Had No Right to Obtain a Subcontract........................ 9

            3.    The Teaming Agreement Did Not Guarantee that Only
            Pro2Serve Would Perform the Subcontract Work....................... 10

        B.    The Teaming Agreement Expired by Its Own Terms............................. 11

        C.    Pro2Serve Lacks Damages ..................................................................... 11

    II.    PRO2SERVE HAS NOT STATED VALID TORT CLAIMS........................... 13

CONCLUSION..................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aerotek, Inc. v. Tyonek Native Corp.*,
   2007 WL 1052590 (E.D. Va. Apr. 2, 2007) ...............................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................7

*Boisseau v. Fuller*,
   30 S.E. 457 (Va. 1898).................................................................................................10

*CGI Fed. Inc. v. FCi Fed., Inc.*,
   814 S.E.2d. 183 (Va. 2018)........................................................................................8, 9

*CVLR Performance Horses, Inc. v. Wynn*e,
   977 F. Supp. 2d 598 (W.D. Va. 2013) .......................................................................13

*Cyberlock Consulting, Inc. v. Info. Experts, Inc.*,
   939 F. Supp. 2d. 572 (E.D. Va. 2013) ..................................................................... 9-10

*Dual, Inc. v. Symvionics, Inc.*,
   122 F.3d 1060 (4th Cir. 1997) ...................................................................................8, 9

*Envirotech Corp. v. Halco Eng'g, Inc.*,
   364 S.E.2d 215 (Va. 1988)...........................................................................................12

*Galloway v. Priority Imps. Richmond, LLC*,
   426 F. Supp. 3d 236 (E.D. Va. 2019) .........................................................................12

*Goines v. Valley Cmty. Servs. Bd.*,
   822 F.3d 159 (4th Cir. 2016) .........................................................................................5

*Grubb & Ellis Co. v. Potomac Med. Bldg., LLC*,
   2009 WL 3175999 (E.D. Va. Sept. 30, 2009)..............................................................11

*InDyne, Inc. v. Beacon Occupational Health & Safety Servs., Inc.*,
   2018 WL 5270331 (E.D. Va. Oct. 23, 2018).............................................................. 8-9

*Johnson v. Am. Towers, LLC*,
   781 F.3d 693 (4th Cir. 2015) .........................................................................................7

*Navar, Inc. v. Fed. Bus. Council*,
   784 S.E.2d. 296 (Va. 2016).......................................................................................8, 11

## TABLE OF AUTHORITIES
### CONTINUED

**Page(s)**

*Ripley Heatwole Co. v. John E. Hall Elec. Contractor, Inc.*,
    69 Va. Cir. 69 (2005) ...............................................................................................12

*Saliba v. Exxon Corp.*,
    865 F. Supp. 306 (W.D. Va. 1994) .........................................................................13

*Trumball Invs., Ltd. v. Wachovia Bank*, N.A.,
    2005 WL 6148880 (E.D. Va. Apr. 15, 2005) ..........................................................12

*U.S. Golf Learning Inst., LLC v. Club Managers Ass'n of Am.*,
    2011 WL 5599379 (E.D. Va. Nov. 15, 2011) ............................................................7

*Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*,
    983 F. Supp. 2d 700 (E.D. Va. 2013) .......................................................................5

*Va. Power Energy Mktg., Inc. v. EQT Energy, LLC*,
    2012 WL 2905110 (E.D. Va. July 16, 2012) ............................................................9

*W.J. Schafer Assocs., Inc. v. Cordant, Inc.*,
    493 S.E.2d 512 (Va. 1997) ........................................................................................8

*Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found.*
    *of N.Y.*,
    822 F.3d 739 (4th Cir. 2016) ................................................................................8, 9

**Statutes**

Va. Code Ann. § 18.2-499 ....................................................................................6, 13

**Other Authorities**

48 C.F.R. § 31.205-18(c) ..................................................................................12-13

Fed. R. Civ. P. 12(b)(6).............................................................................................7

Plaintiff's Complaint tells a story this Court has often heard:  a disappointed proposal partner sues the prime contractor because it failed to win a post-award subcontract.  But Plaintiff's flawed lawsuit relies solely on a "Teaming Agreement" that—based on its unambiguous language—is *unenforceable* under Virginia law.  This case should be dismissed like the many similar cases that have come before this Court seeking to enforce an unenforceable Teaming Agreement.

Defendant Hanford Mission Integration Solutions, LLC ("HMIS") (a joint venture majority owned by Defendant Leidos Integrated Technology, LLC ("Leidos")) is the prime contractor on a multi-billion-dollar Department of Energy ("DOE") contract.  Before award, Plaintiff Professional Project Services, Inc. ("Pro2Serve") was one of many potential subcontractors that "teamed" with Defendants to submit the winning proposal.  HMIS won the competition, but DOE unilaterally rejected HMIS' request to award a sole-source subcontract to Pro2Serve.

Pro2Serve now blames Defendants for DOE's decision.  Pro2Serve's lawsuit—based on alleged breaches of an aspirational and unenforceable Teaming Agreement—suffers multiple fatal flaws:

*First*, Pro2Serve has no right to a subcontract.  Both the Fourth Circuit and the Virginia Supreme Court have held that a teaming agreement requiring future negotiation of a subcontract is an unenforceable "agreement to agree," and creates no right to a subcontract.  Many disappointed subcontractors have come to this Court hoping to vindicate their alleged right to a subcontract in a teaming agreement; all have failed.  So too should this one.

*Second*, despite Defendants' efforts to obtain a subcontract for Pro2Serve, DOE—**<u>in writing</u>**—rejected Pro2Serve's sole-source subcontract award.  Defendants were bound to follow

DOE's direction.  Pro2Serve ignores the critical language in the Teaming Agreement that expressly negates Defendants' obligation to Pro2Serve if—as happened here—DOE rejects its proposed subcontract.

*Third*, the Teaming Agreement has expired; it expired by its own terms when DOE rejected the proposed subcontract.

*Fourth*, Pro2Serve agreed to a "Limitation of Liability" that bars the damages it now seeks, including lost profits, lost business, or punitive damages.

None of Pro2Serve's various contract or tort claims survives the plain language of the Teaming Agreement, and Pro2Serve has not alleged any non-contractual bases to support a valid claim.  The Court should dismiss the Complaint with prejudice.

## <u>ALLEGED FACTS</u>

I.   **LEIDOS SUBMITTED A PROPOSAL TO DOE FOR A HUGE CONSTRUCTION CONTRACT IN WASHINGTON STATE**

Leidos, Inc., with headquarters in Reston, VA, is among the ten largest federal contractors.  One of its subsidiaries is Defendant Leidos, a company Leidos acquired from Lockheed Martin Corporation in 2016.

For several years Leidos has been majority owner of the prime contractor on a huge incumbent contract for DOE at the Hanford nuclear power facility in Washington state.  The contract largely involves environmental remediation addressing years of nuclear weapons research and manufacturing at the facility.  Complaint ¶ 12.

In 2017, DOE issued a Request for Proposals ("RFP") for the follow-on contract, the "Hanford Mission Essential Services Contract" (the "Prime Contract").  *Id.* ¶ 13.  The total cost of the Prime Contract was expected to be "roughly $4.8 billion."  *Id.* ¶ 15.  The RFP required

that the winning contractor commit that 20% of the contract value—almost a billion dollars—be performed by small business subcontractors.  *Id.* ¶ 21.

Leidos led a team to prepare a proposal in response to the RFP for the Prime Contract. To do so, Leidos formed Defendant HMIS as a "Special Purpose Entity" ("SPE") to submit its proposal and to perform the Prime Contract if awarded.  *See* Complaint ¶ 9; Teaming Agreement at 1, attached hereto as Exhibit 1.

## II.     LEIDOS AND PRO2SERVE ENTERED INTO A TEAMING AGREEMENT TO SUBMIT A PROPOSAL TO DOE

Leidos teamed with six companies to submit the HMIS proposal to DOE.  One of those companies, Plaintiff Pro2Serve, is a small Tennessee company.  Complaint ¶¶ 7 & 19.  To memorialize their desire to win the Prime Contract and obtain a subcontract for Pro2Serve, Leidos and Pro2Serve entered into a Teaming Agreement on October 23, 2018.  Teaming Agreement at 1; *see* Complaint ¶ 25.

The Teaming Agreement has many provisions that are central to this lawsuit—most of which the Complaint ignores.

First, the stated purpose of the Teaming Agreement was **<u>not</u>** to procure the award of a sole-source subcontract for Pro2Serve; its purpose was to team together for responding to the RFP.  Teaming Agreement at 1; Complaint ¶ 2.  Consistent with this purpose the parties **<u>agreed in the Teaming Agreement</u>**—**<u>in the future</u>**—**<u>to negotiate a sole-source subcontract</u>**.  The Teaming Agreement stated that a subcontract under the Prime Contract would be subject to future "good faith negotiations," "to the extent permitted by Government rules," about the "work [to] be performed" and the "price," if HMIS were to be selected as the prime contractor:

> If, during the term of this Agreement, a prime contract resulting from the Solicitation is awarded to the SPE, *the Parties will, . . . to the extent permitted by Government rules, regulations and applicable law, engage in good faith negotiations towards*

-3-

> ***entering into a subcontract. The Parties will undertake***
> ***reasonable efforts to enter into a subcontract*** . . . Such work
> shall be performed by the Subcontractor . . . at a price and other
> terms and conditions to be mutually agreed upon between the
> Parties . . . .

Teaming Agreement ¶ 9 (emphasis added).

Second, Pro2Serve agreed that **HMIS would abide by any DOE direction** regarding the

award of a subcontract to Pro2Serve. This agreement included abiding by DOE's direction **not**

to award a subcontract to Pro2Serve—in which case, Leidos and HMIS would have "no further

obligations to [Pro2Serve]":

> It is understood that the SPE may be directed by the Government
> to place the work . . . with another source, or to direct that such
> work be bid on a competitive basis. . . . ***If a reversal cannot***
> ***reasonably be obtained, then the SPE shall comply with the***
> ***Government's direction, and under such circumstances, the***
> ***Parties shall have no further obligations to one another***
> ***hereunder*** . . . .

*Id.* ¶ 11 (emphasis added).

Third, and consistent with Paragraph 11, Pro2Serve agreed that the Teaming Agreement

would expire if DOE rejected a subcontract to Pro2Serve:

> This Agreement shall remain in effect until the first of the
> following shall occur:
>
> g. The SPE [HMIS] is unable to obtain Government
> approval of the Subcontractor as a subcontractor to the SPE . . . .

*Id.* ¶ 19 & ¶ 19.g.

Fourth, Pro2Serve agreed to a broad **Limitation of Liability clause** that bars claims for

damages that exceed a party's actual expenditures to prepare the HMIS proposal (commonly

called "bid and proposal costs"):

> ***The liability of either Party*** to the other for any claims . . . arising
> out of or relating to this Agreement . . . regardless of the legal
> theory asserted, including breach of contract or . . . tort . . . ***shall***

> *not, in the aggregate, exceed the amount of out-of-pocket costs incurred by the other Party under this Agreement which are not otherwise reimbursed either directly or indirectly by the Government.* In no event shall either Party be liable to the other for any punitive. . . or consequential damages (including, but not limited to, lost profits, lost revenues, [or] lost business opportunities . . .) . . . regardless of the legal theory sought . . . .

*Id.* ¶ 7 (emphasis added).

The Teaming Agreement also states that it "shall be governed by and construed, enforced and interpreted under the laws of the Commonwealth of Virginia." *Id.* ¶ 30.

## III.   DOE REJECTED HMIS' REQUEST TO AWARD A SUBCONTRACT TO PRO2SERVE

On December 5, 2019, DOE selected HMIS' proposal and awarded it the Prime Contract. Complaint ¶ 37.

Multiple times, HMIS attempted to obtain DOE approval to award sole-source subcontracts to Pro2Serve and its other team members (including in a letter to DOE on September 1, 2020).[1]  However, DOE **in writing** rejected HMIS' proposal to award subcontracts to Pro2Serve and other team members.  *See* Letter from T. Corbett, DOE Contracting Officer, to R. Wilkinson, HMIS President, September 22, 2020, attached hereto as Exhibit 2.[2]  DOE's primary basis for the denial was that the subcontracts "move[] incumbent employees with their benefits non-competitively to small businesses to perform the same work they performed for the

---

[1]     Because this September 1, 2020 letter is marked "Official Use Only," and because it contains sensitive proprietary information, HMIS cannot file it in open court but can provide it to the Court *in camera*, if requested.

[2]     This Court can review this official Government action on a Rule 12 motion because the document is integral to the Complaint's allegations and the authenticity of the document is undisputed.  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).  The Court can also take notice of actions on official U.S. Government documents.  *Cf. Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 983 F. Supp. 2d 700, 707 (E.D. Va. 2013) (taking judicial notice of a Notice of Allowability issued by the U.S. Patent and Trademark Office because such notice was an official U.S. Government document).

[previous] prime [contractor]," which "is not designed to meet the intent" of the Prime Contract. *Id.* at 2.  DOE also rejected HMIS' proposal to award ***sole-source*** subcontracts to pre-selected team members:

> As required by Clause H.22 [of the Prime Contract], [HMIS] . . .
> shall . . . use competitive sourcing to the maximum extent
> practicable. . . .  Accordingly, the approach to utilize non-
> competitive procurements for pre-selected subcontractors, as
> requested in Reference 1 [HMIS' Sept. 1, 2020 letter], is not
> consistent with FAR requirements, and is therefore denied.

*Id.* at 3.

After the Government declined to approve HMIS' proposal to award a sole-source subcontract to Pro2Serve, HMIS notified Pro2Serve by letter on September 24, 2020.  *See* Letter from K. Kosmoski to L. Alcorn, September 24, 2020, attached hereto as Exhibit 3, *referenced at* Complaint ¶ 43.  In that letter, HMIS informed Pro2Serve that the Teaming Agreement was terminated because DOE had refused to approve Pro2Serve's sole-source subcontract.  *Id.* at 3 ("HMIS has been unable to obtain DOE consent for the sole-source award of a subcontract to [Pro2Serve].  Accordingly, pursuant to Section 19 of the Teaming Agreement, the Agreement is no longer in effect, and the teaming arrangement between the parties has terminated.").

## IV.    PRO2SERVE'S COMPLAINT ALLEGES FIVE CAUSES OF ACTION

Almost two months after being advised that DOE rejected the subcontract, and the Teaming Agreement was terminated, Pro2Serve filed this lawsuit against Leidos and HMIS.

Pro2Serve asserts five causes of action.  The first two sound in breach of contract: breach of an alleged "noncompete" agreement (Complaint ¶¶ 61-67) and breach of an alleged promise to award a subcontract (*id.* ¶¶ 68-77).  The other three are tort claims:  tortious interference with contract (*id.* ¶¶ 78-84), tortious interference with business expectancy (*id.* ¶¶ 85-96), and civil conspiracy under Va. Code Ann. § 18.2-499 (*id.* ¶¶ 97-101).

Pro2Serve seeks damages and also punitive damages.  *Id.* at 16.  Pro2Serve demands over $23 million in damages in the Civil Cover Sheet.

The Complaint also seeks a "temporary" injunction and alleged that Pro2Serve was suffering "irreparable harm."  *Id.* ¶ 6 & p. 15.  However, Pro2Serve never filed a motion for temporary restraining order or preliminary injunction.

## STANDARD OF REVIEW

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court should dismiss a complaint if it fails to allege facts that state a claim for relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court should assume the truth of the alleged facts and dismiss the complaint where they do not rise to a valid claim for relief.  *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015).

Despite the liberal pleading standard applied under Rule 12(b)(6), the Court should dismiss claims if they can be resolved by **unambiguous language** of the parties' contract.  *E.g.*, *U.S. Golf Learning Inst., LLC v. Club Managers Ass'n of Am.*, No. 11-cv-869, 2011 WL 5599379, at *4, *6 (E.D. Va. Nov. 15, 2011) (granting motion to dismiss because claim was not valid under unambiguous contract).

## ARGUMENT

## I.   PRO2SERVE FAILS TO STATE CLAIMS FOR BREACH OF CONTRACT

The Court should dismiss Pro2Serve's contract claims for multiple reasons, including that the Teaming Agreement is unenforceable.

### A.   The Teaming Agreement Is an Unenforceable "Agreement to Agree"

It is well established in Virginia that a Teaming Agreement is merely an "agreement to agree."  For this reason, Pro2Serve does not have a right or expectation to a subcontract under the Teaming Agreement.

### 1. *Many Courts Have Held that a Teaming Agreement Does Not Create the Right to a Subcontract*

Teaming agreements do not create enforceable contracts guaranteeing subcontracts.  The **Fourth Circuit** bluntly stated:  "Such 'agreements to agree' are uniformly unenforceable in Virginia." *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 752 (4th Cir. 2016); *accord Dual, Inc. v. Symvionics, Inc.*, 122 F.3d 1060, *1, *3-5 (4th Cir. 1997) (no claim for fraud or breach of teaming agreement when prime contractor did not award subcontract to plaintiff).  This rule merely enforces Virginia contracting law.  The bedrock requirement of any enforceable contract is that it contain material terms that are "reasonably certain," such that the Court "should not determine the terms . . . upon which the parties might ultimately agree." *W.J. Schafer Assocs., Inc. v. Cordant, Inc.*, 493 S.E.2d 512, 519 (Va. 1997).

Applying this rule, the **Virginia Supreme Court** has held that teaming agreements such as this one do not create rights to subcontracts where, like here, the parties must negotiate all material terms of a subcontract in the future. *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E.2d. 183, 189 (Va. 2018) ("Well-established precedent compels us not to impose a subcontract on parties to a teaming agreement when they have expressly agreed to negotiate the material terms of a subcontract in the future."); *Navar, Inc. v. Fed. Bus. Council*, 784 S.E.2d. 296, 300 (Va. 2016) ("The rules of contract law do not apply to the Teaming Agreement because it is merely an agreement to agree to negotiate at a future date.").

Relying on these well-established principals, this Court has repeatedly held that teaming agreements do not create enforceable contractual promises to award subcontracts. *InDyne, Inc. v. Beacon Occupational Health & Safety Servs., Inc.*, No. 18-cv-756, 2018 WL 5270331, at *4 (E.D. Va. Oct. 23, 2018) (teaming agreement not enforceable because it contemplated that the

"subcontract may not come to fruition"); *Cyberlock Consulting, Inc. v. Info. Experts, Inc.*, 939 F. Supp. 2d. 572, 580 (E.D. Va. 2013), *aff'd*, 549 F. App'x 211 (4th Cir. 2014) (failure to award subcontract did not breach teaming agreement); *Va. Power Energy Mktg., Inc. v. EQT Energy, LLC*, No. 11-cv-630, 2012 WL 2905110, at *4 (E.D. Va. July 16, 2012) (a teaming agreement that requires negotiations of material terms in good faith "will be construed as an agreement to agree rather than a valid contract").

### 2.    *Pro2Serve Had No Right to Obtain a Subcontract*

Because the Fourth Circuit and Virginia Supreme Court have stated unequivocally that teaming agreements are unenforceable, Pro2Serve has failed to state a claim that Defendants breached a good faith requirement in the Teaming Agreement to negotiate a subcontract with Pro2Serve.  Complaint ¶¶ 68-77.  Under Fourth Circuit, Virginia Supreme Court, and this Court's ample precedent, the Teaming Agreement does not create a right to a subcontract.  *E.g.*, *Zoroastrian Ctr.*, 822 F.3d at 752; *Dual*, 122 F.3d at *4; *Cyberlock Consulting*, 939 F. Supp. 2d. at 580; *CGI Fed.*, 814 S.E.2d. at 189.

The 2013 *Cyberlock* case demonstrates the deficiencies in Pro2Serve's Complaint—the Teaming Agreement here has the same features as the one this Court held unenforceable in *Cyberlock*.  **First**, here the written instrument is called a "Teaming Agreement," not a contract or subcontract.  The same was true in *Cyberlock*, where this Court found that the title "implies 'that the parties intended it to be a nonbinding expression in contemplation of a future contract.'"  939 F. Supp. 2d at 580 (quoting *Va. Power*, 2012 WL 2905110, at *4).  **Second**, here the Teaming Agreement (at ¶ 9) says the parties "will . . . engage in good faith negotiations towards entering into a subcontract," and that the "price and other terms and conditions [would] be mutually agreed upon between the Parties."  The same was true in *Cyberlock*, where the agreement to future negotiations was "strong evidence to show that they did not intend the previous

negotiation to amount to an agreement."  939 F. Supp. 2d at 580 (quoting *Boisseau v. Fuller*, 30 S.E. 457, 47 (Va. 1898)).  The Court should find that Pro2Serve here fails to state a claim for breach of the Teaming Agreement for the same reasons the Court did so in *Cyberlock*.

The Court should therefore dismiss with prejudice Pro2Serve's claim for breach of the Teaming Agreement for failure to negotiate and award a sole-source subcontract.

### 3.     The Teaming Agreement Did Not Guarantee that Only Pro2Serve Would Perform the Subcontract Work

Pro2Serve also alleges that Defendants have breached a "noncompete" clause in the Teaming Agreement because HMIS allegedly will perform the work promised to Pro2Serve. Complaint ¶¶ 61-67.  This claim fails for multiple reasons too.

1.     The claim seeks to enforce an alleged promise in the Teaming Agreement that only Pro2Serve would perform the work post-award.  Complaint ¶ 4.  As explained in subsections I.A.1 and I.A.2 above, the Teaming Agreement did not create obligations to award the work to Pro2Serve.

2.     The claim misconstrues the plain language of the Teaming Agreement. Pro2Serve cites a provision of the Teaming Agreement that restricts Leidos from competing against Pro2Serve **in the competition** on the Prime Contract (meaning, it would not join a competing team's proposal).  Complaint ¶ 28 (quoting Teaming Agreement ¶ 21).  The Teaming Agreement does not make a "noncompete" promise about a **subcontract,** and does not restrict Leidos (or anyone else) from "compet[ing] against" Pro2Serve for work post-award.

3.     Post-award, Pro2Serve agreed that "[HMIS] may be directed by the [DOE] to place the work . . . with another source."  Teaming Agreement ¶ 11.  Because DOE rejected HMIS' proposal to subcontract that work on a sole-source basis, HMIS was required to follow DOE's direction and did not have the option for Pro2Serve to perform it.

-10-

For these reasons, the Court should dismiss Pro2Serve's breach claims.

**B.      The Teaming Agreement Expired by Its Own Terms**

Independently, even if the Teaming Agreement created a right to a sole-source subcontract (which it did not), it expired by its own terms.

The term of the Teaming Agreement ended when, "[t]he SPE [HMIS] is unable to obtain Government approval of the Subcontractor [Pro2Serve] as a subcontractor to the SPE [HMIS] . . . ." *Id.* ¶ 19.g.  DOE refused to approve HMIS' award of sole-source subcontracts to Pro2Serve and other team members in its letter on September 22, 2020.  *See* Exhibit 2.

Under the plain language of Paragraph 19.g, the Teaming Agreement expired on September 22, 2020 and Pro2Serve cannot state a claim under it.  *Cf. Grubb & Ellis Co. v. Potomac Med. Bldg., LLC*, No. 08-cv-971, 2009 WL 3175999, at *8 (E.D. Va. Sept. 30, 2009) ("the Court finds that Defendant could not have breached the Exclusive Agency Agreement because it expired").

**C.      Pro2Serve Lacks Damages**

Finally, because Pro2Serve has not alleged any damages that this Court could award, it fails to state a claim for breach of contract.  *See Navar*, 784 S.E.2d 299 (valid claim for breach of contract requires "injury or damage").

The Limitation of Liability clause bars recovery of almost all types of damages, including:  "punitive, exemplary, special, indirect, incidental or consequential damages (including, but not limited to, lost profits, lost revenues, [or] lost business opportunities . . . )." Teaming Agreement ¶ 7.  It bars these damages "for any claims, liabilities, actions or damages arising out of or relating to this Agreement, howsoever caused and regardless of the legal theory asserted, including breach of contract or . . . tort."  *Id.*

Virginia courts fully enforce contractual limitations of liability like this one.  A

"contractual provision specifically limiting a party's liability" embodies "one of the essential

purposes of contract law—the freedom of parties to limit their risks in commercial transactions."

*Ripley Heatwole Co. v. John E. Hall Elec. Contractor, Inc.*, 69 Va. Cir. 69, *2 (2005).  Thus,

"Virginia courts regularly enforce exculpatory agreements."  *Trumball Invs., Ltd. v. Wachovia*

*Bank*, N.A., No. 05-cv-15, 2005 WL 6148880, at *4 (E.D. Va. Apr. 15, 2005).  Courts regularly

reject claims for damages barred by contractual limitations provisions.  *E.g.*, *Envirotech Corp. v.*

*Halco Eng'g, Inc.*, 364 S.E.2d 215, 219 (Va. 1988) (consequential damages); *Galloway v.*

*Priority Imps. Richmond, LLC*, 426 F. Supp. 3d 236, 243 (E.D. Va. 2019) (punitive damages).

Pro2Serve has not alleged any facts that would support damages recoverable under the

Limitation of Liability clause.  It cannot claim lost business, lost revenues or lost opportunities;

its demand for punitive damages (Complaint p. 16) is barred as well.

Pro2Serve also has not alleged any facts that could constitute **direct** damages.  Again, the

plain language of the Teaming Agreement bars any such claim.  Pro2Serve agreed that it would

not seek reimbursement of expenditures it made in performing the Teaming Agreement:

> Each Party shall bear all costs, expenses, risks and liabilities
> incurred by it:  (a) arising under requirements of this Agreement;
> and (b) relating to its bid and proposal efforts.  Neither Party shall
> have any right to any reimbursement, payment or compensation of
> any kind under this Agreement.

Teaming Agreement ¶ 7.  To the extent any claim for direct damages could exist, it would be

limited to "out-of-pocket costs incurred by the other Party under this Agreement which are not

otherwise reimbursed either directly or indirectly by the Government."  *Id*.  Even if Pro2Serve

had any such costs—and the Complaint does not allege it did—the costs of participating in

preparing a proposal **are** recoverable from the Government as indirect costs on other federal

contracts, and thus are not recoverable in a lawsuit under the Teaming Agreement.  *See* 48

C.F.R. § 31.205-18(c).  Therefore, Pro2Serve has not alleged, nor could it allege, any recoverable damages under the Limitations of Liability clause.

For these reasons, the Court should dismiss Pro2Serve's contract claims with prejudice.

## II.   PRO2SERVE HAS NOT STATED VALID TORT CLAIMS

The Court should also dismiss Pro2Serve's tort claims for tortious interference with a contractual relationship, tortious interference with business expectancy, and for violation of Va. Code Ann. § 18.2-499 (statutory conspiracy to injure a business).  Complaint ¶¶ 78-101.

Each of Pro2Serve's tort claims are derivative of its contractual claims in the Teaming Agreement.  The alleged expectations of contracts and business arise from the Teaming Agreement and no other source.  *Id.* ¶¶ 79-80.  The alleged conspiracy is to interfere with Pro2Serve's rights under the Teaming Agreement, and nothing else.  *Id.*

Because Pro2Serve has no right to a subcontract or future business under the Teaming Agreement, *see* Part I *infra*, its derivative tort claims fail to state a claim.  "Without an intentional breach of the contract, there can be no tortious interference with contractual rights, and thus, this claim fails."  *Aerotek, Inc. v. Tyonek Native Corp.*, No. 05-cv-1080, 2007 WL 1052590, at *7 (E.D. Va. Apr. 2, 2007); *accord Saliba v. Exxon Corp.*, 865 F. Supp. 306, 311-12 (W.D. Va. 1994), *aff'd*, 52 F.3d 322 (4th Cir. 1995) (no claim for interference where plaintiff lacked enforceable relationship or expectancy).  Because "no subcontract ever existed . . . as incontrovertibly evidenced by their failure to agree on a price[,]" "no tortious interference with contractual rights could have occurred."  *Aerotek*, 2007 WL 1052590, at *7.  Similarly, no claim exists under § 18.2-499 without allegations other than breach of contract.  *CVLR Performance Horses, Inc. v. Wynn*e, 977 F. Supp. 2d 598, 604 (W.D. Va. 2013).

## **CONCLUSION**

For these reasons, Leidos and HMIS respectfully request that the Court grants this

Motion and dismiss Pro2Serve's Complaint with prejudice.


Dated:  December 3, 2020                    Respectfully submitted,

                                           /s/ Douglas P. Lobel
                                           Douglas P. Lobel, Esq.
                                           Virginia State Bar Number 42329
                                           David A. Vogel
                                           Virginia State Bar Number 48971
                                           Attorney for Leidos Integrated Technology, LLC
                                           and Hanford Mission Integration Solutions, LLC
                                           COOLEY LLP
                                           11951 Freedom Drive
                                           Reston, Virginia 20190-5656
                                           Telephone: (703) 456-8000
                                           Facsimile: (703) 456-8100
                                           Email:  dlobel@cooley.com
                                           Email:  dvogel@cooley.com

                                           Daniel J. Grooms III, Esq.
                                           *Admitted pro hac vice*
                                           Attorney for Leidos Integrated Technology, LLC
                                           and Hanford Mission Integration Solutions, LLC
                                           COOLEY LLP
                                           1299 Pennsylvania Ave., N.W., Suite 700
                                           Washington, DC  20004
                                           Telephone:  (202) 842-7800
                                           Facsimile:  (202) 842-7899
                                           Email:  dgrooms@cooley.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of December 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Daniel Edward Johnson
> Covington & Burling LLP
> One City Center
> 850 10th Street, NW
> Washington, DC 20001
> Email: dejohnson@cov.com
>
> *Attorney for Plaintiff Professional Project Services, Inc.*

> /s/ Douglas P. Lobel
> Douglas P. Lobel
> Virginia State Bar Number 42329
> Attorney for Leidos Integrated Technology, LLC
> and Hanford Mission Integration Solutions, LLC
> COOLEY LLP
> 11951 Freedom Drive
> Reston, Virginia 20190-5656
> Telephone: (703) 456-8000
> Facsimile: (703) 456-8100
> Email: dlobel@cooley.com

239006760