IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PROFESSIONAL PROJECT SERVICES, INC. ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LEIDOS INTEGRATED TECHNOLOGY, LLC ) <br> ) <br> and ) <br> ) <br> HANFORD MISSION INTEGRATION ) <br> SOLUTIONS, LLC, ) <br> ) <br> ) <br> Defendants. ) | Case No. 1:20-cv-1360-CMH-MSN |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Daniel E. Johnson, Va. Bar No. 88696
Covington & Burling LLP
One CityCenter
850 Tenth St., NW
Washington, D.C. 20001
Phone: 202-662-5224
Fax: 202-778-5224
dejohnson@cov.com
Counsel for Plaintiff

December 17, 2020

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

STANDARD OF REVIEW ................................................................................................................. 2

ARGUMENT ........................................................................................................................................ 3

I.      Pro2Serve's Complaint States Claims for Breach of Contract ........................................... 3

         A.      The Complaint Alleges the Existence and Breach of a Legally Enforceable Contract ................................................................................................................ 3

         B.      The Court Should Reject Defendants' Strawman Arguments and Fact Disputes ................................................................................................................ 6

                1.      Defendants Misconstrue the Non-Compete Clause .................................... 7

                2.      Defendants' Assertion that the Agreement Expired Hinges on a Fact Dispute .................................................................................................. 9

                3.      The Letters that Defendants Attached to Their Motion Only Create Fact Disputes ............................................................................................... 10

         C.      The Relief Plaintiff Seeks Is Not Barred by the Agreement ................................ 11

II.     Pro2Serve States Claims for Tortious Conduct ................................................................ 12

CONCLUSION .................................................................................................................................. 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*All Business Solutions, Inc. v. NationsLine, Inc.*,
629 F. Supp. 2d 553 (E.D. Va. 2009) ...................................................................................... 13

*Allen v. Aetna Cas. and Sur. Co.*,
281 S.E. 2d 818 (Va. 1981) ................................................................................................... 3, 5

*CGI Fed., Inc. v. FCi Fed., Inc.*,
814 S.E.2d 183 (Va. 2018) ................................................................................................ *passim*

*Clatterbuck v. City of Charlottesville*,
708 F.3d 549 (4th Cir. 2013) ...................................................................................................11

*Cyberlock Consulting, Inc. v. Info Experts, Inc.*, 939 F. Supp. 2d 572 (E.D. Va. 2013) .......................................................................................................................................... 6

*Dual, Inc. v. Symvionics, Inc.*,
122 F.3d 1060, 1997 WL 565663 (4th Cir. 1997) ..................................................................... 6

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
637 F.3d 435 (4th Cir. 2011) .................................................................................... 2, 7, 9, 12

*Filak v. George*,
594 S.E. 2d 610 (Va. 2004) .................................................................................................. 3, 5

*Goines v. Valley Community Servs., Bd.*, 822 F.3d 159 (4th Cir. 2016) ........................................ 3

*Guerre v. Nichols*,
2019 WL 1810980 (E.D. Va. Apr. 23, 2019) ........................................................................ 3, 10

*InDyne, Inc. v. Beacon Occupational Health & Safety Servs., Inc.*, 2018 WL 5270331 (E.D. Va. Oct. 23, 2018) .......................................................................................... 6

*Marks v. Scottsdale Ins. Co.*,
2014 WL 3767116 (E.D. Va. July 30, 2014) ............................................................................. 8

*Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*,
991 F.2d 94 (4th Cir. 1992) ...................................................................................................... 9

*Science Applications Int'l Corp. v. CACI-Athena, Inc.*,
2008 WL 2009377 (E.D. Va. May 8, 2008) .............................................................................. 4

*United States ex rel. Aarow/IET, LLC v. Hartford Fire Ins. Co.*,
  __ Fed. App'x __, 2020 WL 7258732 (4th Cir. Dec. 10, 2020) ................................................. 2, 5

*Va. Power Energy Mktg., Inc. v. EQT Energy, LLC*,
  2012 WL 2905110 (E.D. Va. July 16, 2012) ................................................................................ 6

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
  780 F.3d 597 (4th Cir. 2015) ................................................................................................ 10, 11

*Zoroastrian Ctr. and Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found.
of N.Y.*, 822 F.3d 739 (4th Cir. 2016) ............................................................................................. 6

**Other Authorities**

48 C.F.R. § 9.601(2) ........................................................................................................................ 3

48 C.F.R. § 9.602 ............................................................................................................................ 3

48 C.F.R. § 31.205-18(c) ........................................................................................................ 11, 12

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 2, 7, 9, 10

Defendants ask this Court to dismiss a claim that Professional Project Services, Inc. ("Pro2Serve") has not made. Defendants assert that Pro2Serve is suing them for failure to award a subcontract, but that is not what Pro2Serve's Complaint alleges (which is why Defendants do not identify where in the Complaint that supposed allegation appears). Pro2Serve has alleged legally sufficient claims that Defendants breached numerous obligations in their Teaming Agreement with Pro2Serve (Complaint Counts I and II) and engaged in tortious conduct (Complaint Counts III, IV, and V).

The Complaint alleges that the parties agreed to jointly prepare a bid for a procurement conducted by the U.S. Department of Energy ("DOE"). Compl. ¶ 2. In consideration for Pro2Serve's assistance preparing the bid, *Id.* ¶¶ 26, 64, 69, Defendants agreed to: include Pro2Serve's pricing in the cost proposal for DOE's evaluation, *Id.* ¶ 31; refrain from competing with Pro2Serve, *Id.* ¶ 28; negotiate in good faith toward execution of a subcontract, *Id.* ¶ 32; and, if DOE denied approval for a subcontract with Pro2Serve, make necessary and good faith efforts to reverse that decision, *Id.* ¶ 33. These were "enforceable, reciprocal obligations governing the parties' relationship during and after the bidding process," and they created an enforceable contract under Virginia law. *CGI Fed., Inc. v. FCi Fed., Inc.*, 814 S.E.2d 183, 191 (Va. 2018).

The Complaint alleges that Defendants breached these duties and engaged in a conspiracy to interfere with the Teaming Agreement. *E.g.*, Comp. ¶ 1. Defendants submitted a bid to DOE that failed to describe Pro2Serve in a meaningful fashion, and they then conspired to falsely tell Pro2Serve that DOE had denied consent for a subcontract. *Id.* ¶¶ 35, 47. Defendants used their false statement as a predicate to wrongfully terminate the Teaming Agreement, working to cut out and compete with Pro2Serve rather than to obtain DOE's consent. *Id.* ¶¶ 47, 60, 70-75. Even if DOE did not consent, Defendants were obligated to seek reversal of that decision, but

they did the very opposite. *Id.* ¶ 74.  Further, Defendants never even attempted to negotiate a subcontract with Pro2Serve, let alone negotiate in good faith. *Id.* ¶ 53.  The Complaint seeks damages recoverable under the Teaming Agreement, damages separately recoverable for Defendants' tortious conduct, and injunctive relief. *Id.* at 15-16.

Ignoring these allegations, Defendants seek to dismiss a phantom claim (*i.e.*, that Pro2Serve was entitled to a future subcontract).  Defendants fail to say where the Complaint makes this supposed allegation, because it does not.  Defendants also raise a series of other invalid arguments that attempt to characterize and dispute the facts alleged in the Complaint, contrary to the standards of Rule 12(b)(6).  None of Defendants' arguments support dismissal of any of Pro2Serve's claims.  Pro2Serve therefore respectfully requests that the Court deny Defendants' motion.

## STANDARD OF REVIEW

When reviewing a motion under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint" and determine whether those allegations state a plausible claim as a matter of law. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quotation omitted).  "[A] complaint needs only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *United States ex rel. Aarow/IET, LLC v. Hartford Fire Ins. Co.*, __ Fed. App'x __, 2020 WL 7258732, at *6 (4th Cir. Dec. 10, 2020) (quotation omitted) (reversing a district court's dismissal of a complaint for breach of contract).

In deciding a motion to dismiss, "all reasonable inferences" must be drawn in plaintiff's favor, and the Court should not resolve factual disputes. *E.I. du Pont*, 637 F.3d at 448.  Likewise, the Court should not consider evidence provided by the movant unless that evidence is

"integral" to the complaint — meaning that it was cited in and "heavily" relied on in the complaint. *E.g.*, *Guerre v. Nichols*, 2019 WL 1810980, at *5 (E.D. Va. Apr. 23, 2019) (Hilton, J.) (citing *Goines v. Valley Community Servs., Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)).

## ARGUMENT

I.   **Pro2Serve's Complaint States Claims for Breach of Contract**

"The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 594 S.E. 2d 610, 614 (Va. 2004). Pro2Serve alleges facts establishing each of these elements.

   A.   **The Complaint Alleges the Existence and Breach of a Legally Enforceable Contract**

To establish an enforceable contract, one need only show that the parties agreed to reasonably definite terms for adequate consideration. *See Allen v. Aetna Cas. and Sur. Co.*, 281 S.E. 2d 818, 819 (Va. 1981). Pro2Serve has adequately alleged that the Teaming Agreement here constituted an enforceable contract. *E.g.*, Compl. ¶¶ 25, 64, 69.

The law permits contractors to bid as a team when competing for a federal contract. *See* 48 C.F.R. § 9.602. In a typical teaming arrangement, one company serves as the prime bidder, while the other serves as a prospective subcontractor. *See id.* § 9.601(2). Companies execute "teaming agreements" to establish the terms and conditions of their cooperative, contractual relationship. *CGI*, 814 S.E.2d at 191.

The Virginia Supreme Court has held that teaming agreements create "enforceable, reciprocal obligations governing the parties' relationship during and after the bidding process." *Id.* Teaming agreements can legally obligate the parties to jointly prepare and submit a bid to the Government, to agree not to compete with each other, and to agree to negotiate in "good faith"

3

toward execution of a subcontract "within the framework provided by their agreement." *Id.* at 186, 191 (noting that the parties' teaming agreement included a non-compete).[1]

Consistent with this precedent, Pro2Serve adequately pled the existence of a legally enforceable contract with definite terms. The Complaint alleges that the parties entered into a teaming agreement to "jointly pursue a multi-billion dollar contract with the Department of Energy[.]" Compl. ¶ 2. The bid would be submitted by a special corporate entity — HMIS — created by Leidos for this purpose. *Id.* ¶ 30.[2] In consideration for "Pro2Serve's proposal support, data, and commitment to work as a subcontractor," *Id.* ¶¶ 64, 69, Defendants agreed to a series of definite terms that would apply during and after the bidding process.

Defendants agreed, among other things, to:

- "[N]ame Pro2Serve in [the] proposal as a team member, describe Pro2Serve's work scope, and include Pro2Serve's pricing in the cost proposal for DOE's evaluation and consideration," Compl. ¶ 31; Defs.' Mem, Ex. 1, Teaming Agreement § 3; *id.* at 10;

- "[E]ngage in good faith negotiations towards entering into a subcontract[]" in the event DOE selected the team's proposal for award, Compl. ¶ 32; Teaming Agreement § 9;

- Not "undertake efforts that are competitive to this [Teaming] Agreement," Compl. ¶ 28; Teaming Agreement § 21; and,

- In the event DOE denied consent to subcontract with Pro2Serve, "present to the Government" the "grounds for reversal of such direction" and "reasonably" make efforts toward "reversal" of that decision, Compl. ¶ 33; Teaming Agreement § 11.

---

[1] For example, in *Science Applications Int'l Corp. v. CACI-Athena, Inc.*, 2008 WL 2009377, at *4 (E.D. Va. May 8, 2008), the court entered a temporary restraining order requiring the defendant to comply with a teaming agreement non-compete clause, though the opinion did not specify whether the court was applying Virginia law.

[2] The Teaming Agreement was made between Leidos and Pro2Serve. Compl. ¶ 2. The Complaint alleges that Leidos later assigned the Teaming Agreement to HMIS. *Id.* ¶ 62.

No more is required to adequately allege the existence of a legally enforceable contract. *E.g.*, *Aarow*, 2020 WL 7258732, at *6; *see also CGI*, 814 S.E.2d at 191; *Allen*, 281 S.E. 2d at 819.

The Complaint then alleges that Defendants breached those enforceable terms:

- "Defendants' proposal did *not* describe Pro2Serve's workshare in any meaningful fashion, and did *not* include and/or identify Pro2Serve's pricing in the cost proposal," Compl. ¶ 35 (emphasis added);

- After DOE selected the team's bid as the winner, Defendants "misrepresented their relationship with Pro2Serve" to DOE and "omitted to inform DOE of the Agreement with Pro2Serve," *id.* ¶¶ 50-51;

- Defendants falsely told Pro2Serve that DOE had denied consent to subcontract, when in fact "DOE did not deny consent for a Pro2Serve subcontract and did not direct Defendants not to subcontract with Pro2Serve," *id.* ¶ 47;

- Even if DOE did deny consent to subcontract — and the evidence provided to date indicates otherwise — Defendants failed to "take necessary and good faith steps to seek reversal of any DOE decision to disapprove of a subcontract with Pro2Serve," *id.* ¶ 74;

- Defendants did not even attempt to negotiate a subcontract with Pro2Serve, let alone negotiate in good faith, *id.* ¶ 53;

- Defendants competed with Pro2Serve in direct violation of the Teaming Agreement, *id.* ¶ 65; and,

- Defendants, having failed to properly include Pro2Serve in the proposal and failed to make the necessary and good faith efforts to obtain DOE's approval of a Pro2Serve subcontract, wrongfully terminated the Teaming Agreement and sought to self-perform the Pro2Serve workshare, *id.* ¶¶ 35, 43, 47, 59-60, 70-75.

Therefore, under well-established Virginia case law, Pro2Serve has adequately pleaded both the existence of an enforceable contract and Defendants' breach of that contract. *See CGI*, 814 S.E.2d at 191; *Filak*, 594 S.E. 2d at 614.

5

### B. The Court Should Reject Defendants' Strawman Arguments and Fact Disputes

Defendants steer clear of these allegations and instead ask the Court to dismiss a claim that Pro2Serve never raised: That Pro2Serve was entitled to a subcontract. *See* Defs.' Mem. at 7-9. Defendants do not — because they cannot — identify where in the Complaint this nonexistent claim was supposedly raised. Nevertheless, Defendants devote much of their brief to attacking this strawman, relying on a host of decisions that stand for the unremarkable proposition that a contract does not arise if the parties do not finish negotiating all its material terms. *See id.* (citing, *e.g.*, *Zoroastrian Ctr. and Darb-E-Mehr of Metro. Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 752 (4th Cir. 2016); *InDyne, Inc. v. Beacon Occupational Health & Safety Servs., Inc.*, 2018 WL 5270331, at *4 (E.D. Va. Oct. 23, 2018); *Cyberlock Consulting, Inc. v. Info Experts, Inc.*, 939 F. Supp. 2d 572, 580 (E.D. Va. 2013)).[3] It is true that, unless the parties agree in advance to definite terms for a subcontract, a teaming agreement does not create an enforceable future subcontract. *CGI*, 814 S.E. 2d at 189. But, as shown above, Pro2Serve is not alleging there was an agreement to enter into a subcontract. This portion of Defendants' memorandum therefore is entirely irrelevant.[4]

---

[3]  Defendant cites *Va. Power Energy Mktg., Inc. v. EQT Energy, LLC*, 2012 WL 2905110, at *4 (E.D. Va. July 16, 2012) for the proposition that a requirement to negotiate in good faith "will be construed as an agreement to agree" and is not enforceable. Defs.' Mem. at 9. To the extent that *Va. Power* can be read to assert that proposition, that case predates the Virginia Supreme Court's 2018 decision in *CGI* and thus does not represent the current state of Virginia law. *CGI*, 814 S.E. 2d at 191 (holding that an agreement to negotiate in "good faith" is enforceable).

[4]  Defendants also rely on *Dual, Inc. v. Symvionics, Inc.*, 122 F.3d 1060 (Table), 1997 WL 565663, at *1, *4 (4th Cir. 1997), but that case — which applied California law — undermines their dismissal motion. In *Dual*, the plaintiff claimed that the prime bidder had breached a teaming agreement by failing to secure the federal agency's "approval" of the plaintiff as a subcontractor and by failing to negotiate in good faith. *Id.* at *4. The court found that those claims were viable as a matter of law, but affirmed the district court's grant of summary judgment for defendant after concluding that deposition testimony and document discovery did

Defendants also dispute the facts alleged in the Complaint. Those arguments cannot be resolved on this Rule 12(b)(6) motion. *See E.I. du Pont*, 637 F.3d at 448 (courts "must accept as true all of the factual allegations" and draw "all reasonable inferences" in the plaintiff's favor) (quotations omitted). Further, Defendants' arguments are contradicted by the allegations of the Complaint and Defendants' own exhibits.

1. Defendants Misconstrue the Non-Compete Clause

*First*, Defendants argue that their actions do not violate the Teaming Agreement's exclusivity (non-compete) clause. Defs.' Mem. at 10. According to Defendants, the non-compete clause only prevented them from competing with Pro2Serve "in the competition on the Prime Contract (meaning, it would not join a competing team's proposal)," so they were free to compete with Pro2Serve after DOE's award decision. *Id.* Defendants are wrong.

The Teaming Agreement's non-compete clause states as follows:

> Since this Agreement, and any proposal, offer or quote prepared or generated in connection therewith, requires the full cooperation of the Parties, both Parties agree that they will not in any manner participate in or undertake efforts that are competitive to this Agreement, *nor* will they compete for the Procurement or respond to the Solicitation, independently or in conjunction with any other Party, during the term of this Agreement.

Compl. ¶ 28 (emphasis added). Under the plain language of that clause, Defendants made two separate commitments: (1) not to "undertake efforts competitive to th[e] Agreement"; and (2) not to "compete for the Procurement or respond to the Solicitation" without Pro2Serve.

Defendants' argument improperly ignores the first commitment and focuses solely on the second. If, as Defendants maintain, the only purpose of this clause was to prohibit Defendants

---

not provide sufficient evidence to support the claims. *Id.* Thus, the case does not support Defendants' request for dismissal. Rather, it shows that Pro2Serve has stated a viable claim.

7

from "compet[ing] for the Procurement or respond[ing] to the Solicitation" without Pro2Serve, there would be no reason for the first commitment. Defendants also ignore the word "nor," which shows the parties' understanding that the first and second commitments were different. Further, the Teaming Agreement defines "this Agreement" to mean "this Teaming Agreement[.]" Teaming Agreement at 1. In contrast, the Teaming Agreement defines "the Solicitation" to mean DOE's "Solicitation or RFP No. 89303318REM000007, any and all modifications or amendments thereto[,]" and it defines "the Procurement" to mean "the entire process pursuant to which the Government selects and processes . . . the acquisition of the goods and/or services described in the Solicitation[.]" *Id.* § 1. Thus, the Teaming Agreement's plain language confirms that the first commitment in the non-compete clause is distinct from the second commitment.

Defendants' urged reading ignores the first commitment, deleting the words "efforts competitive to this Agreement, nor" from the clause, which violates the Virginia rule that contracts must be interpreted to give reasonable meaning to every word. *See, e.g.*, *Marks v. Scottsdale Ins. Co.*, 2014 WL 3767116, at *6 (E.D. Va. July 30, 2014) (citing *Hutter v. Heilmann*, 475 S.E.2d 267, 270 (Va. 1996)). The only way to give reasonable meaning to each term of the non-compete clause — as Virginia law requires, *id.* — is to conclude that the first commitment not to engage in "efforts competitive to th[e] Agreement" is something different than (or at least something more than) the second commitment not to "compete for the Procurement or respond to the Solicitation." Indeed, because "th[e] Agreement" indisputably covers matters after the competition for the Procurement and response to the Solicitation — such as the Agreement's statement that, if the Government awarded a prime contract, Pro2Serve "shall perform" certain portions of the project, Teaming Agreement at 7-8, and Defendants'

8

promise to take necessary and good faith steps to seek reversal of any DOE decision to disapprove of a subcontract with Pro2Serve, *id.* at § 11 — Defendants' commitment not to engage in "efforts competitive to th[e] Agreement" includes the commitment not to compete with Pro2Serve in those efforts. The Complaint alleges that Defendants violated that commitment by competing with Pro2Serve for the work allocated to Pro2Serve in the Agreement. *See* Compl. ¶¶ 35, 43, and 65.

Even if Defendants' interpretation of the non-compete clause were correct, Pro2Serve has still alleged a breach of the clause. Defendants competed with Pro2Serve for the Procurement by failing to describe Pro2Serve's workshare and costs in the team's bid, as required by the Agreement. Compl. ¶ 35.[5]

### 2. Defendants' Assertion that the Agreement Expired Hinges on a Fact Dispute

*Second*, Defendants argue that the Teaming Agreement has expired by its own terms because, in their view, DOE "refused to approve" a subcontract with Pro2Serve. Defs.' Mem. at 11. But the Complaint alleges that "DOE did *not* deny consent for a Pro2Serve subcontract," and that Defendants' communications with Pro2Serve misrepresented DOE's actions. Compl. ¶ 47 (emphasis added). The law requires that those allegations be accepted as true in resolving a motion to dismiss. *See E.I. du Pont*, 637 F.3d at 448. Further, Defendants' argument ignores their obligation to seek "reversal" of any DOE direction not to subcontract with Pro2Serve.

---

[5] Defendants' interpretation, at best, suggests that the clause is ambiguous, which would create questions of fact that cannot be resolved here. *See Martin Marietta Corp. v. Int'l Telecomm. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992) ("[T]he construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim.").

9

Compl. ¶ 33; Teaming Agreement § 11. If Defendants wish to try to disprove Pro2Serve's allegations, they must wait until summary judgment or trial.

Confirming that they are trying to argue the merits of this case at the dismissal stage in plain violation of the Rule 12(b)(6) standard, Defendants attach to their motion a letter from DOE that they claim proves that "DOE refused to approve" a subcontract with Pro2Serve. *See* Def.'s Mem at 11 (citing Ex. 2). Despite the standards of Rule 12(b)(6), Defendants argue that this letter should be considered by the Court because it is "integral" to the Complaint. Defs.' Mem. at 5 n.2. That contention is objectively incorrect. "To be integral to the complaint, [an] extrinsic document must not merely be referenced, but the complaint must rely heavily on its terms and effect." *Guerre*, 2019 WL 1810980, at *5 (Hilton, J.). The Complaint does not even reference the letter that Defendants offer, let alone rely "heavily" on it, so it is not integral.

        3.     <u>The Letters that Defendants Attached to Their Motion Only Create Fact Disputes</u>

Separately, Defendants claim that the Court can take judicial notice of "actions on [sic] official U.S. Government documents." Defs.' Mem. at 5 n.2. Defendants do not say what facts are subject to judicial notice, but presumably Defendants seek to prove that DOE in fact denied consent for a Pro2Serve subcontract, because Defendants refer to their Exhibit 2. However, judicial notice is appropriate only for "a fact that is not subject to reasonable dispute." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (quoting Fed. R. Evid. 201(b)). The question of what DOE did or did not approve is plainly in dispute, and thus is not appropriate for resolution by judicial notice. *See id.* Moreover, the authenticity and origin of Defendants' document have not been established. For example, the Complaint alleges that Defendants were presented with a draft document setting forth DOE's general position on subcontracting and "proposed edits to that document[,]" Compl. ¶ 52, which in turn raises

10

questions about whether Defendants influenced the drafting of Exhibit 2. This only underscores that there is a dispute about the facts, making judicial notice inappropriate.

Finally, even if the Court could take judicial notice of Exhibit 2, it must be construed in a "light most favorable" to Pro2Serve. *See Zak*, 780 F.3d at 607. Because the letter does not mention Pro2Serve at all, it could not properly be read to contradict the Complaint's allegation in Paragraph 47 that DOE did *not* deny consent for a Pro2Serve subcontract, so it cannot be used as a basis to dismiss the Complaint. *See id.* (reversing a district court's dismissal of a complaint based on judicially noticed facts); *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 558 (4th Cir. 2013) (same). [6]

### C. The Relief Plaintiff Seeks Is Not Barred by the Agreement

Pro2Serve alleges that it suffered "damages" and "irreparable harm" as a result of Defendants' actions. Compl. ¶¶ 66, 76. In its request for relief, the Complaint seeks monetary damages and injunctive relief. Pro2Serve has adequately alleged this legal and equitable relief.

Defendants argue that the Teaming Agreement's "Costs/Limitation of Liability" clause precludes Pro2Serve's contract claims, insisting that it bars the relief Pro2Serve seeks. *See* Defs.' Mem. at 12. That is wrong. Defendants ignore the Complaint's request for injunctive relief. *See, e.g.*, Compl. ¶ 6; *id.* at 15 (Request for Relief). The limitation of liability clause does not prohibit injunctive relief — and Defendants do not suggest otherwise. Teaming Agreement § 7 (making no mention of injunctive relief).

---

[6]  Defendants assert that DOE rejected HMIS's request to award a "sole source" subcontract to Pro2Serve. *E.g.*, Defs.' Mem. at 1, 10. Even if that were true, that rejection would only underscore that Defendants failed to properly include Pro2Serve in Defendants' proposal for the procurement and failed to take necessary steps to explain to DOE that a subcontract award to Pro2Serve was appropriate. Teaming Agreement §§ 3, 11.

11

Furthermore, Defendants concede that certain direct damages are allowed if they are not "otherwise reimbursed either directly or indirectly by the Government." Defs.' Mem. at 12 (quoting Teaming Agreement § 7). Defendants insist that Pro2Serve's direct damages are precluded by this clause because they are potentially "recoverable from the Government" under 48 C.F.R. § 31.205-18(c), essentially arguing that the Government should pay for the costs of their wrongdoing. *Id.* But the contract clause does not preclude costs that are "recoverable" — rather, it applies to costs that have been "reimbursed." There are no facts in the Complaint, or even Defendants' motion, to suggest that the Government has actually reimbursed any costs. In any event, Section 31.205-18(c) does not require the Government to pay any costs as a matter of law; it merely addresses whether certain bid or proposal costs are allowable "to the extent" other requirements are met. 48 C.F.R. § 31.205-18(c).

In sum, Counts I and II of the Complaint adequately allege all of the elements of a breach claim, and provide a short and plain statement of the case that puts Defendants on notice of the issues, which is all that is required at this preliminary stage. *See, e.g.*, *E.I. du Pont*, 637 F.3d at 448 ("The complaint need only give the defendant fair notice of what the claim is and the grounds upon which it rests." (quotation omitted)). Defendants' arguments to the contrary both misconstrue Pro2Serve's claims and dispute or ignore the factual allegations in the Complaint. The Court therefore should deny Defendants' motion to dismiss.

## II.   Pro2Serve States Claims for Tortious Conduct

The rest of Pro2Serve's Complaint (Counts III, IV, and V) adequately allege tortious interference with contract, tortious interference with business expectancy, and conspiracy. *See* Compl. ¶¶ 78-101. The Complaint alleges facts showing that Defendants conspired to interfere with the Teaming Agreement, acted in concert to misrepresent their communications with DOE, and caused a breach of the Teaming Agreement. *See, e.g.*, Compl. ¶¶ 44, 47 (alleging that

Defendants jointly prepared a letter that purported to terminate the Teaming Agreement by making false statements about DOE); *see also id.* ¶¶ 97-101 (alleging a conspiracy to commit tortious interference).

Defendants do not dispute that conclusion and make only one argument for dismissal of these claims: That they are "derivative" of Pro2Serve's supposed claim for entitlement to a future subcontract. *See* Defs.' Mem. at 13. Defendants' argument is "derivative" of Defendants' strawman argument discussed above; as shown above, Pro2Serve's Complaint does not allege entitlement to a future subcontract. Rather, Pro2Serve alleges that Defendants breached the Teaming Agreement's terms governing the parties' relationship during and after the bidding process, which are enforceable under Virginia law. *See supra* Section I(A); *CGI*, 814 S.E.2d at 191. The Complaint's tort counts allege that Defendants acted in concert to interfere with those enforceable obligations, and further alleges misrepresentations by Defendants separate from the Teaming Agreement. *See* Compl. ¶¶ 47, 51, 59, 60; *see also id.* ¶¶ 86-88, 97-101. Thus, Pro2Serve's Complaint adequately alleges tortious conduct, and the Court should deny Defendants' motion to dismiss Counts III, IV and V.[7]

---

[7] Defendants make no argument that the Teaming Agreement's limitation of liability clause applies to Pro2Serve's tort claims, nor could they. Under Virginia public policy, limitation of liability clauses do not apply to claims based on intentional torts. *See All Business Solutions, Inc. v. NationsLine, Inc.*, 629 F. Supp. 2d 553, 560 (E.D. Va. 2009).

## **CONCLUSION**

      Pro2Serve respectfully requests that the Court deny Defendants' motion.

                                          Respectfully submitted,

                                          /s/
                                          Daniel E. Johnson Va. Bar No. 88696
                                          Covington & Burling LLP
                                          One CityCenter
                                          850 Tenth Street, NW
                                          Washington, D.C. 20001
                                          Phone: 202-662-5224
                                          Fax: 202-778-5224
                                          dejohnson@cov.com
                                          Counsel for Plaintiff

December 17, 2020

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 17th day of December, 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

      Douglas P. Lobel
      David A. Vogel
      Cooley LLP
      11951 Freedom Drive
      Reston, VA 20190-5656
      dlobel@cooley.com
      dvogel@cooley.com
      Counsel for Defendants

      Respectfully submitted,

      /s/
      Daniel E. Johnson Va. Bar No. 88696
      Covington & Burling LLP
      One CityCenter
      850 Tenth Street, NW
      Washington, D.C.  20001
      Phone:  202-662-5224
      Fax:  202-778-5224
      dejohnson@cov.com
      Counsel for Plaintiff

December 17, 2020