IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| PROFESSIONAL PROJECT SERVICES, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cv-01360-CMH-MSN |
| | ) | |
| LEIDOS INTEGRATED TECHNOLOGY, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## THEIR MOTION TO DISMISS UNDER RULE 12(b)(6)

Douglas P. Lobel, Esq.
Virginia State Bar Number 42329
David A. Vogel
Virginia State Bar Number 48971
Attorney for Leidos Integrated Technology, LLC
and Hanford Mission Integration Solutions, LLC
COOLEY LLP
11951 Freedom Drive
Reston, Virginia 20190-5656
Telephone: (703) 456-8000
Facsimile: (703) 456-8100
Email:  dlobel@cooley.com
Email:  dvogel@cooley.com


Daniel J. Grooms III, Esq.
*Admitted pro hac vice*
Attorney for Leidos Integrated Technology, LLC
and Hanford Mission Integration Solutions, LLC
COOLEY LLP
1299 Pennsylvania Ave., N.W., Suite 700
Washington, DC  20004
Telephone: (202) 842-7800
Facsimile: (202) 842-7899
Email:  dgrooms@cooley.com

Dated:  December 23, 2020

# TABLE OF CONTENTS

**Page**

I.   PRO2SERVE IS IN FACT SUING FOR FAILURE TO AWARD A SUBCONTRACT ............................................................................................. 1

II.  PRO2SERVE IGNORES ITS FAILURE TO ALLEGE LEGALLY COGNIZABLE DAMAGES ........................................................................... 2

    A.   Pro2Serve Must Allege Facts Supporting Any Damages ...................................... 3

    B.   Pro2Serve Does Not Allege Plausible Injury from Alleged Breaches of Contract .................................................................................................................. 4

III. PRO2SERVE ASKS THE COURT TO IGNORE DOE'S CONCLUSIVE LETTER ................................................................................................................ 8

IV.  PRO2SERVE'S ALLEGATIONS ARE INSUFFICIENT FOR ITS TORT CLAIMS TO SURVIVE ................................................................................... 9

    A.   Pro2Serve Has Not Alleged Defendants Engaged in "Separate" Conduct Beyond Breach of the Teaming Agreement ........................................................... 9

    B.   Count III (Tortious Interference with Existing Contract) ..................................... 9

    C.   Count IV (Tortious Interference with Prospective Business Advantage) ............ 10

    D.   Count V (Statutory Conspiracy Under Va. Code Ann. § 18.2-499) ................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................3

*CGI Fed., Inc. v. FCi Fed., Inc.*,
    814 S.E.2d 183 (Va. 2018)........................................................................7

*Chaves v. Johnson*,
    335 S.E.2d 97 (Va. 1985)........................................................................10

*CVLR Performance Horses, Inc. v. Wynne*,
    977 F. Supp. 2d 598 (W.D. Va. 2013) ....................................................11

*Filak v. George*,
    594 S.E.2d 610 (Va. 2004)........................................................................3

*LifeNet Health v. LifeCell Corp.*,
    2016 WL 11672048 (E.D. Va. Sept. 2, 2016)..........................................3

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) ...................................................................3

*Ramos v. Wells Fargo Bank, NA*,
    770 S.E.2d 491 (Va. 2015)........................................................................3

*Sci. Applications Int'l Corp. v. CACI-Athena, Inc.*,
    2008 WL 2009377 (E.D. Va. May 8, 2008) (Opp. )................................7

*Streza v. Bank of Am.*,
    2014 WL 3810363 (E.D. Va. Aug. 1, 2014)........................................3-4

*Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*,
    983 F. Supp. 2d 700 (E.D. Va. 2013) ......................................................8

*Veney v. Wyche*,
    293 F.3d 726 (4th Cir. 2002) ...................................................................8

**Statutes**

Va. Code Ann. § 18.2-499 ...............................................................................10

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................................................................................3

Pro2Serve is engaged in an obvious sleight of hand.  It now concedes that it cannot sue Defendants for failure to award a subcontract under the Teaming Agreement, so it attempts to recast the allegations in its Complaint to avoid dismissal.  But its Complaint is clear—Pro2Serve alleges *no injury* other than loss of a subcontract.  Because failure to award a subcontract is not a legally cognizable injury here, Pro2Serve has not alleged an essential element of its claims, and thus fails to state any claim on which relief can be granted.

Further dooming Pro2Serve's Complaint, the Government agency that awarded the prime contract refused in writing to approve Pro2Serve's subcontract.  Pro2Serve's Complaint cannot survive these glaring infirmities.

## I.     PRO2SERVE IS IN FACT SUING FOR FAILURE TO AWARD A SUBCONTRACT

Defendants' motion to dismiss is premised on law holding that Pro2Serve has no right to a subcontract award under the Teaming Agreement.  Def. Mem. at 1, 9-10.  Pro2Serve concedes that this well-established doctrine in the Fourth Circuit and Virginia law is "true."  Opp. at 6.

To avoid this obstacle, Pro2Serve argues that it is not "suing . . . for failure to award a subcontract," and it chastises Defendants for failing to support this "phantom" and "nonexistent claim" with cites to the Complaint.  Opp. at 1, 2, 6.  But Pro2Serve is running from the thrust of its Complaint, which repeatedly complains that Defendants failed (or failed to try) to award a subcontract to Pro2Serve.  For example:

- "Defendants never attempted to negotiate subcontract terms with Pro2Serve" and "Defendants . . . failed to negotiate a subcontract with Pro2Serve"—that is, **Defendants failed to award (or try to award) a subcontract**.  Complaint ¶¶ 53 & 65.

- "Defendants never submitted a proper and complete package of information that DOE would need to evaluate Pro2Serve as a subcontractor"—that is, **Defendants failed to award (or try to award) a subcontract**.  *Id.* ¶ 48.

- "DOE did not deny consent for a Pro2Serve subcontract and did not direct Defendants not to subcontract with Pro2Serve"—that is, **Defendants failed to award (or try to award) a subcontract**. *Id.* ¶ 47.

- "Defendants failed to make good faith efforts to seek reversal of the purported DOE decision on subcontracting" and "Defendants breached their contractual duty to take necessary and good faith steps to seek reversal of any DOE decision to disapprove of a subcontract with Pro2Serve"—that is, **Defendants failed to award (or try to award) a subcontract**. *Id.* ¶¶ 52 & 74.

- "[I]f the team won the DOE contract, Pro2Serve would receive a subcontract"— that is, **Defendants failed to award (or try to award) a subcontract**. *Id.* ¶ 19.

- "Small Business Administration's rules provide . . . [that] [HMIS] must make good faith efforts to utilize the small business [Pro2Serve] as a subcontractor during contract performance to the same extent as in the proposal or teaming agreement"—that is, **Defendants failed to award (or try to award) a subcontract**. *Id.* ¶ 17.

- "Defendants have told Pro2Serve that they intend to perform themselves the work allocated to Pro2Serve in the [Teaming] Agreement" and "Defendants promised to work exclusively with Pro2Serve for the workshare in the Agreement and not to compete with Pro2Serve for the same"—that is, **Defendants failed to award (or try to award) a subcontract**. *Id.* ¶¶ 59 & 64.

- Pro2Serve lost future business with "DOE and other customers"—that is, **Defendants failed to award (or try to award) a subcontract**. *Id.* ¶ 85.

Pro2Serve's insistence that this case is not about failure to award a subcontract is merely revisionist history designed to defeat this motion.

Consistent with its sole focus on its loss of a subcontract award, Pro2Serve's Civil Cover Sheet values its loss of the subcontract at about $23 million. Def. Mem. at 7.

## II.    PRO2SERVE IGNORES ITS FAILURE TO ALLEGE LEGALLY COGNIZABLE DAMAGES

The glaring flaw in Pro2Serve's Complaint is that it has no legal right to compel the award of a subcontract. Pro2Serve dances around well-established Fourth Circuit and Virginia law by contending that its breach claims are unrelated to failure to award a subcontract. But Pro2Serve's recasting of its Complaint eliminates a necessary element for each of its claims—

-2-

how Defendants' alleged breaches and torts *damaged or injured* Pro2Serve.  Without alleging

damages, Pro2Serve fails to state valid breach claims.

### A.      Pro2Serve Must Allege Facts Supporting Any Damages

The legal requirements of Pro2Serve's claims are well established.  Pro2Serve must

allege injury or damage in a breach of contract claim.  Opp. at 3 (citing *Filak v. George*, 594

S.E.2d 610, 614 (Va. 2004)).  However, Pro2Serve cannot merely allege it was damaged; rather,

it must allege facts that set forth the injury it suffered.  *Ramos v. Wells Fargo Bank, NA*, 770

S.E.2d 491, 493 (Va. 2015) ("[A]n essential element in a breach of contract action is that the

defendant's breach of a contractual obligation caused injury or damage to the plaintiff.

Accordingly, the plaintiff must allege facts setting forth the injury or damage incurred as a result

of defendant's breach.") (citations omitted).

Pro2Serve cannot avoid dismissal with bald conclusions or by merely parroting the

elements of a cause of action.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d

250, 255 (4th Cir. 2009) ("[E]lements of a cause of action, and bare assertions devoid of further

factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes.").

Furthermore, Pro2Serve's alleged facts of its injury must be ***plausible***—the Court is not required

to assume the truth of a factual allegation if it is not a plausible one.  *Ashcroft v. Iqbal,* 556 U.S.

662, 678 (2009).

Courts grant Rule 12(b)(6) motions where, like here, a complaint fails to allege facts

supporting legally recognized damages.  *LifeNet Health v. LifeCell Corp.*, No. 15-cv-461, 2016

WL 11672048, at *4 (E.D. Va. Sept. 2, 2016) (granting Rule 12(b)(6) motion where complaint

lacked allegations of any legally-recognized damages); *Streza v. Bank of Am.*, No. 13-cv-573,

2014 WL 3810363, at *7 (E.D. Va. Aug. 1, 2014) (granting Rule 12(b)(6) motion; "[T]he

Complaint fails to allege that [Plaintiff] was damaged by Defendants' breach of oral

promises . . . .  Because the Complaint lacks any allegation regarding this essential element of the breach of contract claim, it fails as a matter of law.").

### B. Pro2Serve Does Not Allege Plausible Injury from Alleged Breaches of Contract

Each claim in Pro2Serve's Complaint is premised on the same alleged injury: Defendants' failure to award (or try to award) a subcontract to Pro2Serve.  However, because Pro2Serve had no right to obtain a subcontract, each claim lacks injury and thus fails.  Def. Mem. at 9-10.

Pro2Serve now attempts to salvage its breach claims by claiming that it suffered damage *other than* that caused by its failure to receive a subcontract award.  Pro2Serve devotes much energy arguing that the Teaming Agreement imposed "enforceable" obligations that Defendants breached.  Opp. at 4-5.  However, for each alleged breach, Pro2Serve fails to address the question:  if not for losing a subcontract, *how was Pro2Serve injured?*  The Complaint fails to allege plausible injury, and Pro2Serve's Opposition provides no other explanation.

This defect infects each alleged breach of the Teaming Agreement (Opp. at 5) in two ways:

- First, Pro2Serve *does not allege a cognizable injury* resulting from each breach. Pro2Serve merely describes the alleged breach, then generically states that it was "damage[d]." Complaint ¶¶ 66, 76, 81, 93 & 100.

- Second, Pro2Serve does not allege any other facts from which the Court could "reasonabl[y] infer[ ]" (Opp. at 2) that Pro2Serve *plausibly* suffered an injury.

Thus, Pro2Serve fails to allege the element of injury necessary to sustain its claims:

| Pro2Serve's Allegations (Opp. at 5) | Missing Allegation |
|---|---|
| *"Defendants' proposal [to DOE] did not describe Pro2Serve's workshare in any meaningful fashion"* | • **No facts alleged** as to how failure to describe Pro2Serve's workshare injured Pro2Serve (other than that DOE refused to approve the **subcontract**);<br>• **Not plausible** that failure to submit certain information in the winning proposal harmed Pro2Serve (other than that DOE refused to approve the **subcontract**). |
| *"Defendants' proposal [to DOE] . . . did not include and/or identify Pro2Serve's pricing in the cost proposal"* | • **Not a requirement**—the Teaming Agreement did not require Leidos or HMIS to submit Pro2Serve's *pricing* in the *cost proposal*;[1]<br>• **No facts alleged** unrelated to award of a subcontract; the Complaint only alleges that failure to provide the information caused DOE to reject the **subcontract** (Complaint ¶ 35);<br>• **Not plausible** that failure to submit pricing information harmed Pro2Serve (other than that DOE refused to approve the **subcontract**). |
| *"Defendants 'misrepresented their relationship with Pro2Serve' to DOE and 'omitted to inform DOE of the Agreement with Pro2Serve"* | • **No facts alleged** about how statements to DOE could have injured Pro2Serve (other than that DOE refused to approve the **subcontract**);<br>• **Not plausible** that a statement to DOE harmed Pro2Serve (other than that DOE refused to approve the **subcontract**). |

---

[1]     Pro2Serve cites Teaming Agreement ¶ 3, which only requires that the proposal "identify [Pro2Serve] as a team member and describe the relationship and respective areas of responsibility." Neither ¶ 3, nor any other provision of the Teaming Agreement, says that HMIS had to submit Pro2Serve's "pricing" in the "cost proposal." To the contrary, ¶ 4 states that Leidos has the right to "take whatever actions it deems necessary to produce a proposal . . . that ha[s] the greatest likelihood" of winning; ¶ 5 states that Pro2Serve would submit pricing information only "[u]pon request of Leidos" and "as specified by Leidos"; and ¶ 8 states that "Leidos shall have the sole right to decide the form *and content* of all documents submitted to the Government" (emphases added).

| Pro2Serve's Allegations (Opp. at 5) | Missing Allegation |
|---|---|
| *"Defendants falsely told Pro2Serve that DOE had denied consent to subcontract"* | • **No facts alleged** as to how an allegedly false statement *to Pro2Serve* injured Pro2Serve;<br>• **Not plausible** that a statement *to Pro2Serve* could have harmed Pro2Serve, given that Pro2Serve alleges it discovered the alleged falsity in discussions with DOE (Complaint ¶ 47). |
| *"Defendants failed to 'take necessary and good faith steps to seek reversal of any DOE decision to disapprove of a subcontract with Pro2Serve"* | • **No facts alleged** as to how a "failure to reverse" a DOE position injured Pro2Serve (other than that Pro2Serve is not receiving a **subcontract**);<br>• **Not plausible** that a failure to reverse DOE's rejection of a subcontract affects any interest of Pro2Serve unrelated to the **subcontract**. |
| *"Defendants did not even attempt to negotiate a subcontract with Pro2Serve"* | • **No facts alleged** as to how failure to negotiate a subcontract injured Pro2Serve (other than to its interest in the **subcontract**);<br>• **Not plausible** that failure to negotiate a subcontract harms Pro2Serve when Pro2Serve has no legally cognizable interest in the subcontract. |
| *"Defendants competed with Pro2Serve in direct violation of the Teaming Agreement"* and *"sought to self-perform the Pro2Serve workshare"* | • **No injury alleged** from the termination (other than that Pro2Serve is not performing a **subcontract**);<br>• **Not plausible** that termination could injure Pro2Serve, now that the competition is over and the team won. |
| *"Defendants . . . wrongfully terminated the Teaming Agreement"* | • **No injury alleged** from the termination (other than that Pro2Serve is not performing a **subcontract**);<br>• **Not plausible** that termination could injure Pro2Serve, now that the competition is over and the team won. |

**_No Legal Support_**.  Pro2Serve cites no cases supporting the validity of its breach claims.

Pro2Serve argues (correctly) that a Teaming Agreement is enforceable for purposes of teaming

together for a competition, even if the promise of a subcontract is unenforceable, citing *CGI Federal, Inc. v. FCi Federal, Inc.*, 814 S.E.2d 183 (Va. 2018).  Opp. at 1 & 3.  That point does not help Pro2Serve.  Alleging an enforceable contract right is one element of a breach claim; alleging ***damage*** is a separately required element.  Opp. at 3.[2]

    ***Alleged Noncompete.***  Pro2Serve wrongly claims that Defendants breached "noncompete" language in the Teaming Agreement (Defendants agree not to "undertake efforts competitive to th[e] Agreement") by performing "Pro2Serve's workshare."  Opp. at 7-9.  First, Pro2Serve is twisting the language of the Teaming Agreement; it does not expressly restrict anyone (including Defendants) from performing that workshare for the DOE.  Def. Mem. at 10.  Second, Pro2Serve is adamant in its Opposition that its Complaint does not assert claims for failure to award a subcontract.  Thus, Pro2Serve has no cognizable claim to perform the "workshare," at issue and suffers no injury if another company performs it.  Pro2Serve wants it both ways: it seeks to preclude others from performing "Pro2Serve's workshare," while simultaneously claiming it is not suing to perform the work itself.

    ***Generic Discussion of "Direct" Damages.***  Pro2Serve's ***only*** discussion of damages concerns the scope of the contract's "Limitation of Liability" clause.  Opp. at 11-12.  Pro2Serve generically argues that "direct" damages are "allowed" under the contract, but Pro2Serve never describes ***what*** direct damages it allegedly suffered.  *Id.* at 12.

---

[2]    Pro2Serve irrelevantly cites *Science Applications International Corp. v. CACI-Athena, Inc.*, No. 08-cv-443, 2008 WL 2009377, at *4 (E.D. Va. May 8, 2008) (Opp. at 4 n.1), in which Defendants' undersigned counsel represented plaintiff.  That case did not involve a teaming agreement, but instead a fully executed ***subcontract***.  The court enforced a subcontract requirement that the defendant participate in the plaintiff's proposal for the follow-on competition.  Because there was an executed subcontract, that case has no factual relevance to Pro2Serve's claims and does not help Pro2Serve fill the gap of its unalleged damages.

Consequently, Pro2Serve fails to allege a valid *claim* for breach of contract because it does not allege any injury from these purported breaches, nor is any injury plausible (other than for failure to award a subcontract).

## III.   PRO2SERVE ASKS THE COURT TO IGNORE DOE'S CONCLUSIVE LETTER

Defendants argued that Pro2Serve cannot state a valid claim for breach of the Teaming Agreement because DOE rejected a subcontract award to Pro2Serve.  Def. Mem. at 5-6. Pro2Serve offers a litany of invalid arguments in response, mostly asking the Court to ignore an official Government directive.

First, Pro2Serve asks the Court to ignore the clear-on-its-face DOE letter because the Complaint alleges a contrary fact—that DOE did *not* reject a subcontract to Pro2Serve.  Opp. at 9.  The Court need not "accept as true allegations that contradict matters properly subject to judicial notice or exhibit."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quotation marks and citation omitted).  Pro2Serve cannot plead around an official DOE action by alleging the opposite of that action.

Second, Pro2Serve alleges that the Court cannot review the DOE letter because it is neither "integral" to nor alleged in the Complaint.  Opp. at 9-10.  But Pro2Serve fails to rebut that the Court can take judicial notice of DOE's official Government action.  Def. Mem. at 5 n.2 (citing *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 983 F. Supp. 2d 700, 707 (E.D. Va. 2013)).  Pro2Serve's contrary allegations about the letter are irrelevant.

Third and fourth, Pro2Serve argues that the Court cannot rely on the DOE letter because the "facts" of the letter are in "reasonable dispute" and the letter does not expressly mention Pro2Serve.  Opp. at 10-11.  But the DOE letter is in direct response to an HMIS submission that specifically requested a subcontract be awarded to Pro2Serve.  Def. Mem. at 5 & n.1.

-8-

Defendants believe there is no ambiguity or possible dispute about the DOE's position; neither should this Court.

The DOE letter is clear that HMIS may not award a subcontract to **any party** without holding an open competition for that work. DOE has spoken; the subcontract Pro2Serve desires will not be awarded unless Pro2Serve wins an open competition for it.

## IV.  PRO2SERVE'S ALLEGATIONS ARE INSUFFICIENT FOR ITS TORT CLAIMS TO SURVIVE

Finally, Pro2Serve's defense of its tort claims in Counts III, IV and V (Opp. at 12-13) ignores both the law and the allegations in its Complaint.

### A.   Pro2Serve Has Not Alleged Defendants Engaged in <u>"Separate" Conduct Beyond Breach of the Teaming Agreement</u>

As a predicate to its discussion of its tort claims, Pro2Serve argues that its tort claims allege misconduct "separate" from the Teaming Agreement. Opp. at 13. Not so. The **only** allegedly "separate" misconduct that Pro2Serve identifies is an alleged misrepresentation as part of "a letter that purported to terminate the Teaming Agreement." *Id.* at 12-13 (citing Complaint ¶¶ 44, 47). Obviously, termination of the Teaming Agreement is not "separate" from the Teaming Agreement. Pro2Serve does not rebut that each tort claim is predicated on alleged breaches of the Teaming Agreement. Def. Mem. at 13.

### B.   <u>Count III (Tortious Interference with Existing Contract)</u>

On its claim for tortious interference with existing contract, Pro2Serve recasts the allegations in its Complaint to avoid well established law but runs head-on into the same problem dooming its breach claims: it fails to allege legally cognizable damages.

Pro2Serve cannot sue for tortious interference with a subcontract where, as here, it has no right to that subcontract. Def. Mem. at 13. Pro2Serve predictably pivots from relying on the subcontract and argues that its tortious interference claim relates only to Teaming Agreement

requirements unrelated to a subcontract award. Opp. at 13. Once again, Pro2Serve must allege

that it suffered damages as a result of the tortious interference. *Chaves v. Johnson*, 335 S.E.2d

97, 102 (Va. 1985). Pro2Serve nowhere alleges what legally cognizable damage it suffered as a

result of "interference" with the Teaming Agreement, other than—again—*failure to obtain a*

*subcontract*. This gaping hole requires dismissal of Count III.

C.  **Count IV (Tortious Interference with Prospective Business Advantage)**

Pro2Serve has abandoned its claim about "prospective business advantage."

The Complaint alleges that Defendants interfered with Pro2Serve's future business with

"DOE and other customers." Complaint ¶ 86. Defendants argued that Pro2Serve has no

protected interest in future business arising from a subcontract to which Pro2Serve has no

enforceable right. Def. Mem. at 13 (citing authorities). Pro2Serve's Opposition provides no

reason why its highly speculative claim about future business with "DOE and other customers"

should survive dismissal.

D.  **Count V (Statutory Conspiracy Under Va. Code Ann. § 18.2-499)**

Pro2Serve has not rebutted Defendants' argument that it failed to state a valid claim for

statutory conspiracy.

Pro2Serve argues that Defendants "acted in concert to interfere with . . . enforceable

obligations" under the Teaming Agreement and made "misrepresentations . . . separate from the

Teaming Agreement." Opp. at 13. But as discussed above, Pro2Serve has ***not*** alleged

misrepresentations "separate" from the Teaming Agreement—the only alleged misrepresentation

that Pro2Serve identifies was allegedly improper termination of the Teaming Agreement. *See*

Part IV.A *supra*. Thus, all the predicate facts of this claim relate solely to alleged breach of the

Teaming Agreement. Pro2Serve does not rebut Defendants' argument that "no claim exists

under § 18.2-499 without allegations other than breach of contract." Def. Mem. at 13 (citing

*CVLR Performance Horses, Inc. v. Wynne*, 977 F. Supp. 2d 598, 604 (W.D. Va. 2013)).

Therefore, Pro2Serve has no valid claim under § 18.2-499.

*     *     *

For these reasons, as well as those in its opening Memorandum, Leidos and HMIS respectfully move that the Court grant their motion and dismiss the Complaint.

Dated:  December 23, 2020                          Respectfully submitted,

/s/ Douglas P. Lobel
Douglas P. Lobel, Esq.
Virginia State Bar Number 42329
David A. Vogel
Virginia State Bar Number 48971
Attorney for Leidos Integrated Technology, LLC
and Hanford Mission Integration Solutions, LLC
COOLEY LLP
11951 Freedom Drive
Reston, Virginia 20190-5656
Telephone: (703) 456-8000
Facsimile: (703) 456-8100
Email:  dlobel@cooley.com
Email:  dvogel@cooley.com

Daniel J. Grooms III, Esq.
*Admitted pro hac vice*
Attorney for Leidos Integrated Technology, LLC
and Hanford Mission Integration Solutions, LLC
COOLEY LLP
1299 Pennsylvania Ave., N.W., Suite 700
Washington, DC  20004
Telephone:  (202) 842-7800
Facsimile:  (202) 842-7899
Email:  dgrooms@cooley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of December 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Daniel Edward Johnson
> Covington & Burling LLP
> One City Center
> 850 10th Street, NW
> Washington, DC 20001
> Email: dejohnson@cov.com
>
> *Attorney for Plaintiff Professional Project Services, Inc.*

> /s/ Douglas P. Lobel
> Douglas P. Lobel
> Virginia State Bar Number 42329
> Attorney for Leidos Integrated Technology, LLC
> and Hanford Mission Integration Solutions, LLC
> COOLEY LLP
> 11951 Freedom Drive
> Reston, Virginia 20190-5656
> Telephone: (703) 456-8000
> Facsimile: (703) 456-8100
> Email: dlobel@cooley.com

240428691